JAMES H. CULLEN v. THE DETROIT TUG & WRECKING COMPANY.

*Sale—Warranty of title—Evidence—Charge to jury.*

1. Where the defense in a suit upon a check, given in part payment for a quantity of cedar posts, is that payment of the check was stopped by the vendee because of the failure of the vendor to furnish a bill of lading of the posts, which the defendant claims he agreed to do, but which the plaintiff denies, it is competent for the plaintiff to show, as rebutting such defense, that the check was dishonored because the defendant had no funds in the bank to meet it.

2. A receipt, given by the plaintiff for the cash payment made on the posts, concluded, "as per B. L., to be furnished by me." And it is held that it was competent for the plaintiff to show that this conclusion was added by the defendant after the receipt was signed, and that no agreement was made to furnish a bill of lading.

3. Where, in a suit to recover the unpaid portion of the purchase price of a quantity of cedar posts on a wrecked schooner on one of the Great Lakes at the time of their purchase, the defendant claims an entire failure of consideration by reason of the seizure and sale of the posts to satisfy a maritime lien which had attached thereto, and the testimony is conflicting as to whether the vendor left the vendee to infer that the posts were free from all liens, or whether he stated to him the location of the posts, and refused to guarantee against liens, a charge to the jury that there is an implied warranty of title on the sale of personal property, and that, if they find that nothing was said about the title to the posts, the defendant is entitled to a verdict, and if they find that the vendor refused to warrant against liens, and that there was no suppression of the truth, the defense is not made out, is not open to objection.

Error to Wayne. (Hosmer, J.) Submitted on briefs January 3, 1894. Decided February 12, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Moore & Moore,* for appellant.

*Dickinson, Thurber & Stevenson,* for plaintiff.

LONG, J. This action is brought to recover upon a $200 check, given by the defendant's president, upon the Third National Bank of Detroit, to George Bible, and indorsed for collection to the plaintiff. The check was given in part payment for a quantity of cedar posts then on a wrecked schooner on the Lake Huron shore, near Port Elgin, Ontario. It was presented at the bank for payment, and returned dishonored for the reason that the defendant had no funds there.

Mr. Bible was sworn as a witness, and testified that he met Mr. Murphy, president of the defendant company, at Detroit, after the schooner was wrecked, and there sold the cedar to him for $300, of which amount $100 was paid down, and the check was given for the balance; that, prior to this time, negotiations had been pending for the sale, but that it was finally completed in Detroit when the parties met. A bill of sale was given of the cedar at the time the check was given; also, a receipt by Bible for the $100. In the receipt is recited: "As per B. L., to be furnished by me." It is contended that, by the terms of this receipt, Bible was to furnish a bill of lading of the cedar. Bible testified that these words were added to the receipt after it was signed, and that he was not to furnish a bill of lading, but that Murphy was to take the cedar as it was then on the vessel. He further testified:

"Murphy asked me if I would agree to furnish him with a bill of lading. I said, 'No.' He said, 'Why?' I said, 'The bill of lading is lost; it went down in the vessel." 'Well,' he said, 'can't you get a duplicate?' I said, 'No; when the captain and I left the vessel, there was some feeling between us, and I knew he would not sign any bill of lading.' I positively refused to make any agreement to furnish a bill of lading. 'Well,' he said, after I told him

I would not guarantee anything, 'I will take the risk; it is only a speculation, anyway.'"

He further testified that Mr. Murphy knew, at the time of the negotiation, that it was a wreck. Continuing, the witness testified:

"He says, 'Will you agree that the stuff is there now?' I said, 'No; I won't. Here is a card that I have just got from there.' He asked me to see it, and I showed it to him, and he kept it. * * * · He asked me if I would guarantee that his tug could get alongside. I said I would not guarantee that; and then I had a captain waiting; that I could make $500 or $600 out of the whole thing. And I says to him, 'I won't guarantee you if the stuff is seized or not.' He says, 'Do you know that it is seized?' I says, 'I will guarantee it is not seized? No.' He says, 'What do you mean?' I said, 'I mean just what I say.' I had a reason for saying so. And he said, 'Do you know that it is seized?' I says, 'I will guarantee that I don't know that it is seized.' I told him it was all strewn along the shore, and told him the points it was situated at."

The defense was an entire failure of consideration, and defendant introduced the record showing the seizure and sale of the property by the maritime court, and that the company never realized anything from it.

The court directed the jury, substantially, that there was an implied warranty in the sale of personal property, and, if they found there was nothing said between the parties respecting the title, there would be a failure of consideration, and their verdict must be for the defendant; but, if they found that Bible stated to Murphy the location of the property, and that he would not guarantee that there were no liens upon it, although he did not know the fact at the time, they might infer from this that the property was taken subject to the liens then existing; that, if there was no suppression of the truth, but it was to be taken subject to such liens as existed, there was no failure of consideration; but, if there, was

nothing said upon the subject of liens,—if Mr. Murphy was left to the inference that the property was free from liens at the time of the purchase,—then there was a failure of consideration, which would form a perfect defense to the action. The jury found a verdict in favor of the plaintiff.

Defendant's counsel insist here that the court erred:

1. In admitting testimony as to the amount defendant had in the bank, when and after it gave the check.

2. In permitting Mr. Bible to testify that the actual terms of the sale were different from what they purported to be by the writings.

3. In charging the jury that Bible's testimony tended to show that he gave defendant notice of the lien.

The court was not in error in permitting the plaintiff to show that defendant did not have sufficient funds in the bank when Mr. Murphy gave the check. One of the defenses set up was that payment of the check was stopped by the drawer before presentation, because no bill of lading was furnished, as defendant claims was agreed should be. The testimony was competent as rebutting this theory, and showing that the check was dishonored by reason of no funds being in the bank to meet it.

On the second question, it was shown, by Mr. Bible's testimony, that the words quoted had been added after signing. It was competent to show this, and to show that no agreement was made to furnish a bill of lading.

On the third point, the testimony has been substantially set out, together with the charge of the court relating to it. If the testimony of Mr. Bible be true, there can be no doubt that Mr. Murphy was buying upon a mere speculation, and not relying upon a warranty of title, after being informed that Mr. Bible would not guarantee that there were no liens upon the property. The testimony shows, at least, that the matter of liens was talked about, and that Mr. Bible refused to guarantee that there were none.

We think the case was fairly submitted to the jury. We find no error in the record.

Judgment affirmed.

The other Justices concurred.