THE UNITED STATES VINEGAR COMPANY, Respondent, *v.* FRANCIS FOEHRENBACH et al., Appellants.

1. CORPORATION — STOCK SUBSCRIPTION — INCORPORATION FOR ILLEGAL OBJECT. In an action brought by a corporation, organized to deal in an article of necessity, to recover unpaid subscriptions to its capital stock, a defense that the plaintiff was incorporated for the illegal purpose of controlling and limiting the production of such article throughout the country, based upon the theory that certain statements and acts of the promoters of the corporation, prior to its formation and relied on as showing an illegal purpose on their part, were adopted by the corporation, is not made out by showing merely that subsequent to the incorporation there were corporate acts which showed, or tended to show, a purpose of controlling the production and sale of the article, and of regulating its cost, through combinations or agreements between the members of the corporation and which would control their dealings with the public.

2. COMBINATIONS IN TRADE — PREVENTION OF COMPETITION. All combinations in trade are not condemned, and self-preservation may justify the prevention of undue and ruinous competition when the prevention is sought by fair and legal methods.

3. CORPORATION — PRESUMPTION OF FORMATION FOR A LEGAL OBJECT. When on its face the organization of a corporation is for objects not necessarily of an illegal nature, it must be presumed that they were within that legitimate class of objects for which corporations may be formed.

4. STOCK SUBSCRIPTION — DEPARTURE FROM PURPOSES OF INCORPORATION. When a person voluntarily subscribes to the capital stock of a corporation, his subscription must be assumed to have been to enable the corporation to carry out the legitimate objects for which it was incorporated, and if the corporation afterwards departs from the purpose of its

creation and enters upon illegal projects, this misconduct must be corrected in some other way than in a suit against the subscriber to recover his subscription.

5. STOCK SUBSCRIPTION — INTERVENTION OF RIGHTS OF CREDITORS. In an action by a corporation to recover an unpaid subscription to its stock, the court will not decline to lend its aid to the enforcement of the contract of subscription, on the ground of the existence of an illegal transaction to which the corporation and the subscriber were parties, where it appears that the corporation is insolvent or embarrassed and that the rights of its creditors have intervened.

6. CERTIFICATE OF INCORPORATION FOR A LEGAL PURPOSE — STOCK SUBSCRIPTION — EFFECT OF SUBSEQUENT CORPORATE ACTS. When a certificate of incorporation expresses no illegal purpose on the part of the promoters, and the transaction between the corporation and subscribers for its stock is valid on its face, subsequent corporate acts, manifesting, or tending to manifest, an illegal purpose on the part of the directors, will not so retroact as of the time when parties were engaged in promoting the formation of the company as, in connection with their acts and declarations of like tenor, to affect the corporation itself with the vice of illegality and to render contracts of subscription to the stock void.

7. STOCK SUBSCRIPTION — CORPORATIONS AS SUBSCRIBERS. The contention that the capital stock of the plaintiff corporation was subscribed for in part by corporations, and that such subscriptions were invalid under the law, is of no avail as a defense to an action brought to recover, from an individual, payment for capital stock subscribed for by him.

*United States Vinegar Co.* v. *Schlegel* (143 N. Y. 537), discussed.

Reported below, 74 Hun, 435.

(Argued December 4, 1895; decided December 19, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 15, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

This was an action brought by the plaintiff, a foreign corporation organized under the laws of the state of Illinois to recover from the defendants, residents of this state, their unpaid subscription to the capital stock of the plaintiff. The defendants, beyond a general denial, set up that the plaintiff was incorporated for the illegal purpose of controlling and limiting the production of vinegar throughout the United States. The trial court, upon a motion of plaintiff's counsel,

directed a verdict in favor of the plaintiff for the amount unpaid on the subscription of the defendants, and denied the request of the defendants to go to the jury upon the question whether the company was organized for legal or illegal purposes. Upon appeal to the General Term from the judgment entered upon the verdict, that court affirmed the proceedings below. The defendants now appeal to this court from the judgment of affirmance at the General Term.

*Benno Loewy* for appellants. It appearing that the plaintiff was formed for purposes illegal in this state, and was doing acts prohibited by the laws of this state to its own citizens and corporations, the plaintiff is not entitled to recognition as a corporation in this state. (*U. S. V. Co.* v. *Schlegel,* 143 N. Y. 537; *People ex rel.* v. *C. G. Co.,* 130 Ill. 168.) It is the duty of the court, upon its own motion, to refuse relief as soon as it appears that the contract or transaction sued upon is void — as being either in violation of law or against public policy — even though no such defense is raised by the pleadings. (*Oscanyan* v. *W. A. Co.,* 103 U. S. 261; *Richardson* v. *Buhl,* 77 Mich. 632; *Russell* v. *Burton,* 66 Barb. 539; 103 U. S. 268; *Coppel* v. *Hall,* 7 Wall. 542; *Holman* v. *Johnson,* 1 Cowp. 341.) The contract sued upon must be construed and its validity determined according to the rules of the common law, and irrespective of the statutes of Illinois or of New York governing stock subscriptions or corporations. If the subscription was for the purpose of forming a corporation for an illegal purpose, it is void, and the courts will consider the real purposes of the corporation, irrespective of its nominal objects as disclosed by the certificate of incorporation. (*Warne* v. *Meyer,* 38 Fed. Rep. 191; *McGrew* v. *C. P. Exchange,* 85 Tenn. 574; *Montgomery* v. *Forbes,* 148 Mass. 249; *Hill* v. *Beach,* 12 N. J. Eq. 31; *M. Mills* v. *A. G. Co.,* 15 S. W. Rep. 503; *J. C. G. Co.* v. *Dwight,* 29 N. J. Eq. 242; *O. R. Co.* v. *O. R. Co.,* 130 U. S. 1; *In re N. D. & A. Co.,* L. R. 1891 [2 Ch. Div.] 505; Murfree on For. Corp. 8; *S. L. C. Assn.* v. *Hennessy,* 11 Mo. App. 555; *C.*

*R. Bridge* v. *W. Bridge*, 11 Pet. 420 ; *D. & P. R. R. Co.* v. *Litchfield*, 23 How. [U. S.] 66 ; *T. Co.* v. *Illinois*, 96 U. S. 63.) The evident object of the formation of the plaintiff was to create a monopoly to control and limit the production of an article of necessity, and to enhance its price. The plaintiff was, therefore, not formed for a legal or lawful purpose either at common law, by the laws of this state or by the laws of the state of Illinois. (*In re N. D. Co.*, L. R. 1891 [2 Ch. Div.] 505 ; *Le Warne* v. *Meyer*, 38 Fed. Rep. 191 ; *McGrew* v. *C. P. Exchange*, 85 Tenn. 574 ; *J. C. G. Co.* v. *Dwight*, 29 N. J. Eq. 242 ; *S. L. C. Assn.* v. *Hennessy*, 11 Mo. App. 555 ; *People ex rel.* v. *C. G. T. Co.*, 130 Ill. 268.) That such a combination is illegal, and that, therefore, the court will not enforce any agreement or contract for the furtherance of such illegal objects is abundantly well settled. (*Judd* v. *Harrington*, 139 N. Y. 105 ; *People* v. *Sheldon*, 139 N. Y. 251 ; *M. R. C. Co.* v. *B. C. Co.*, 68 Penn. St. 173 ; *People* v. *N. R. S. R. Co.*, 22 Abb. [N. C.] 201 ; Penal Code, § 168, sub. 6 ; *Mitchell* v. *Reynolds*, 1 P. Wms. 181 ; *Hooker* v. *Vandewater*, 4 Den. 349 ; *S. Co.* v. *Guthrie*, 35 Ohio St. 666 ; *Leonard* v. *Poole*, 114 N. Y. 371 ; *D. W. W. C. Co.* v. *N. J. W. C. Co.*, 14 N. Y. Supp. 277 ; *Strait* v. *N. H. Co.*, 18 N. Y. Supp. 224 ; *T. S. C. O. Co.* v. *Adone*, 45 Alb. L. J. 476 ; *Craft* v. *McConoughy*, 79 Ill. 346.) If the real purposes and objects of the formation of plaintiff were illegal or against public policy, it never was legally a corporation, and all acts purporting to create it such were null, void and of no effect. (*Dartmouth College Case*, 4 Wheat. 637 ; *People ex rel.* v. *C. G. Co.*, 130 Ill. 168 ; *S. C. V. M. & L. Co.* v. *Hayes*, 76 Cal. 387 ; *P. F. Co.* v. *Adler*, 90 Cal. 110 ; *W. W. W. Assn.* v. *Starkey*, 84 Mich. 76 ; *Chapin* v. *Brown*, 83 Iowa, 156 ; *Clancy* v. *O. S. M. Co.*, 62 Barb. 395 ; *Tyle* v. *Yates*, 3 Barb. 222 ; *Mellis* v. *Clark*, 20 Wend. 24 ; Chitty on Cont. 695 ; *Tatum* v. *Kelley*, 25 Ark. 209 ; *Alford* v. *Rurke*, 21 Ga. 46 ; *Buck* v. *Albee*, 26 Vt. 184 ; *Schmidt* v. *Baker*, 17 La. Ann. 261 ; *Emery* v. *O. C. Co.*, 47 Ohio St. 320 ; *Hooker* v. *Vandewater*, 4 Den. 349 ; *Stanton* v. *Allen*, 5 Den. 434 ; *S. Co.* v.

*Guthrie,* 35 Ohio St. 665; *D. M. Co.* v. *Roeber,* 106 N. Y. 473; *Leslie* v. *Lorillard,* 110 N. Y. 519; 26 U. S. Stat. at Large, 209; Penal Code, § 168; *Leonard* v. *Poole,* 114 N. Y. 371; *People* v. *N. R. S. R. Co.,* 22 Abb. [N. C.] 199; *M. R. C. Co.* v. *B. C. Co.,* 68 Penn. St. 173.) If the purpose of the corporation were illegal, the mere fact that corporate existence continued and business was done by the corporation for some time does not make this purpose legal, nor will the court for such reason enforce the illegal contracts. (*O. R. Co.* v. *O. R. Co.,* 130 U. S. 1; *P. Co.* v. *S. L., etc., R. R. Co.,* 118 U. S. 290; *Thomas* v. *R. R. Co.,* 101 N. Y. 71.) There was no proof in the case of the incorporation of the plaintiff.   (U. S. R. S. §§ 905, 906; 1 Greenl. on Ev. § 498; *Merrill* v. *Tice,* 104 U. S. 557; *Parr* v. *Greenbush,* 72 N. Y. 462; *Water Comrs.* v. *Lansing,* 45 N. Y. 19; *Bookman* v. *Stegman,* 105 N. Y. 621.)

*S. R. Ten Eyck* for respondent. The due incorporation of the plaintiff is shown by the certificate of the secretary of the state of Illinois, under whose laws it was created. (*Doris* v. *French,* 4 Hun, 292; *P. W. Co.* v. *Badger,* 67 N. Y. 298; 2 Waterman on Corp. § 201; Morawetz on Corp. § 750; *Dutchess* v. *Davis,* 14 Johns, 298; *S. B. R. R. Co.* v. *Hamlin,* 24 Hun, 394; *C. Bank* v. *Pfeiffer,* 22 Hun, 334; 108 N. Y. 242–252; *Eaton* v. *Aspinwall,* 19 N. Y. 119; *B. & A. R. R. Co.* v. *Cary,* 26 N. Y. 78; *Whitford* v. *Laidler,* 94 N. Y. 151; *Vedder* v. *Mudgett,* 93 N. Y. 310; *Craven* v. *E. M. Co.,* 21 N. E. Rep. 984; *Vulcan* v. *Myers,* 58 Hun, 161.) An agreement to take shares in a corporation about to be formed is valid, and may be enforced by the company after its incorporation without any allotment of its stock and without any previous demand for payment of the subscription. (*B. & N. Y. R. R. Co.* v. *Dudley,* 14 N. Y. 336; *P. W. Co.* v. *Badger,* 67 N. Y. 294; *B. & J. R. R. Co.* v. *Gifford,* 87 N. Y. 294; *L. O. R. R. Co.* v. *Mason,* 16 N. Y. 451; *Trebilcox* v. *McAlpine,* 46 Hun, 473; *Leonard* v. *C. S. N. Co.,* 84 N. Y. 53.)   The defendant's subscription is absolute in its terms,

and cannot be varied or contradicted by parol evidence. (*P. W. Co.* v. *Badger*, 6 Hun, 293; 67 N. Y. 299; 31 N. Y. 273; *B. R. R. Co.* v. *Dudley*, 14 N. Y. 336.) The plaintiff was organized for a legal purpose, and that purpose cannot be changed into an illegal one by any acts or declarations of its promoters. (*Munson* v. *S. G. & C. R. R. Co.*, 103 N. Y. 58; 143 N. Y. 537.) Assuming that the court has the right to go behind the charter of the plaintiff, and to consider all the evidence in the case for the purpose of determining the real objects of the plaintiff's formation, still we claim that nothing of an illegal nature is shown. (3 Chand. 133; *Leslie* v. *Lorillard*, 110 N. Y. 519; *People* v. *N. R. S. R. Co.*, 54 Hun, 370; *Wickens* v. *Evans*, 3 Y. & J. 318; *Skrainka* v. *Scharringhausen*, 8 Mo. App. 622; *O. S. Co.* v. *M. S. Co.*, 18 Grant's Ch. 540; *D. M. Co.* v. *Roeber*, 106 N. Y. 473; *Richardson* v. *Buhle*, 77 Mich. 632; *Marsh* v. *Russell*, 66 N. Y. 288; *Marie* v. *Garrison*, 83 N. Y. 28; *Hopkins* v. *Ensign*, 122 N. Y. 144; *S. O. Co.* v. *Schofield*, 16 Abb. [N. C.] 372; *Lorillard* v. *Clyde*, 86 N. Y. 384; *Curtis* v. *Gokey*, 68 N. Y. 304; *M. R. R. Co.* v. *C. R. R. Co.*, L. R. [9 App. Cas.] 689; *Ives* v. *Smith*, 3 N. Y. 645; *C. S. R. Co.* v. *Cushman*, 9 N. E. Rep. 629; *D. W. Co.* v. *H. W. Co.*, 55 Fed. Rep. 851; 121 N. Y. 628.) As against the creditors of the plaintiff, the defendant is estopped from asserting that it was formed for an illegal purpose. (*Atty.-Gen.* v. *G. M. Ins. Co.*, 77 N. Y. 272; *P. C. Co.* v. *McMillan*, 119 N. Y. 46; Code Civ. Pro. § 756; *P. W. Co.* v. *Badger*, 67 N. Y. 294.) It is not error to receive the evidence of the insolvency of the plaintiff. (*P. W. Co.* v. *Badger*, 67 N. Y. 294.)

GRAY, J. The defendants insist that there is additional proof in the present case, which takes it out of the operation of our decision in the case between this same plaintiff and Schlegel. (143 N. Y. 537.) A careful consideration of the case fails to show that it is so materially changed by this further proof, as to compel us to reach a different conclusion from that reached in the prior case. Judge O'BRIEN observed in

the *Schlegel* case, with respect to certain statements and acts of the promoters of the plaintiff company, which were relied upon as evidence of an illegal purpose or object in the formation of the company, that it was unnecessary to inquire whether such statements and acts furnished evidence of an illegal purpose; because it did not appear that they were ever adopted or acted upon by the corporation itself. The defendants now argue that the additional proof in the present case establishes such an adoption and ratification. But the difficulty is that not only the evidence is lacking of any formal adoption by the plaintiff of any illegal undertakings; but, speaking in a strict or legal sense, there was nothing for the company to adopt or ratify. The doctrine of ratification belongs to the law of agency and seems misapplied here. The promoters had made no engagements or contracts; but had merely gotten up a prospectus and had made various declarations, prior to the formation of the plaintiff corporation. When the corporation was formed, its object was declared in the certificate to be " to buy, sell, deal in and handle vinegar." Those purposes, on their face, do not imply an illegal object, or one necessarily inconsistent with public policy, as declared by the public law. The strongest way in which the case might be put for the defendants is, that, subsequently to the incorporation of the plaintiff, there were corporate acts which showed, or tended to show, a purpose of controlling the production and sale of vinegar and of regulating its cost, through combinations or agreements between those who were members of the company and which would control their dealings with the public. In a certain sense, it might be said that that was in line with the projects of the promoters of the company; but that there was such an adoption or ratification of any illegal purpose or scheme, upon the formation of the plaintiff corporation, as to necessarily affect it with a vice which would taint contracts of subscription to the capital stock, cannot be said. The design of the directors may have been immoral and against public policy because of the means proposed. But not all combina-

tions are condemned, and self-preservation may justify pre-
vention of undue and ruinous competition, when the preven-
tion is sought by fair and legal methods.  On its face the
organization of the company was for objects, which were
not necessarily of an illegal nature and the presumption must
be, in such a case, that they were within that legitimate class
of objects for which corporations may be formed.  The
defendants voluntarily subscribed to the capital stock of the
company and their subscription must be assumed to have
been to enable it to carry out the legitimate objects for which
it was incorporated.  If "afterwards the corporation," as
was said in the opinion in the *Schlegel* case, "departed from
the purpose of its creation and entered upon projects which
were illegal, this misconduct must be corrected in some other
way than in a suit against the defendant to recover his sub-
scription."  That way, as was pointed out, might be through
a suit by the People to vacate the charter.  Furthermore, if
it were possible to assume the existence of an illegal trans-
action here, to which plaintiff and defendants were parties, it
would not be a case where the court would decline to lend its
aid to the enforcement of the contract of subscription, for the
rights of the creditors of this insolvent or embarrassed com-
pany have intervened.  It would be highly inequitable that
the defendants should escape and that the creditors of the
company should suffer.  We did not intend to hold in the
*Schlegel* case that any subsequent corporate act, manifesting,
or tending to manifest, an illegal purpose on the part of the
directors, might so retroact as of the time when parties were
engaged in promoting the formation of the company as, in
connection with their acts and declarations of like tenor, to
affect the corporation itself with the vice of illegality and to
render contracts of subscription to the stock void.  Had the
certificate of incorporation expressed any illegal purpose of
its promoters, another and a very different question might be
presented ; but that is not this case.  On its face, the transac-
tion between the plaintiff and the defendants was valid and it

is only by seeking to inject into it the alleged vice of subsequent corporate dealings that it can be said to be tainted and, therefore, unenforceable. This is a distinction which has no support in the cases, or in principle. We see no reason, therefore, for changing our views with respect to the right of the plaintiff to recover upon the contract of subscription.

Upon the other point which has been pressed upon us, that the incorporation of the plaintiff was not proved, our views can be briefly stated. One of the defendants did not deny the legal incorporation. The other defendant did put it in issue. It may possibly be that when the plaintiff rested his case, the incorporation had not been strictly and fully proved as required by legal rules. But the defendant elected to proceed with the case and, before the close of all the evidence, the laws of the state of Illinois were in the case and showed that the certificate of incorporation was in substantial compliance with them. The point that it did not appear that the certificate was recorded in the office of the recorder of deeds of the county, as required by the Illinois law, was not distinctly taken, nor did the motion to dismiss suggest it. The objection was general. Had the defendants pointed out as a defect that which they now insist upon, it is quite possible that the plaintiff might have supplied the omission. The opportunity should have been afforded to it at any rate. We think, too, that there was enough in the evidence, perhaps, to show that the plaintiff had been recognized and treated as a corporation, not only by the defendants, but by the courts of the state of Illinois.

The argument that it appears that the capital stock was subscribed for, in part, by corporations and that such subscriptions were invalid under the law, is of no avail. That is a question for the People to raise through their proper officers and in appropriate proceedings. The defendants cannot raise it. At the furthest, it might be available in proceedings to vacate the charter — a point, however, we do not consider.

We do not think it necessary to review at greater length the questions, which the appellants have argued with so much

fullness. We think the case was, in the main, covered by the decision in the *Schlegel* case and that there was, in the present case, no material question for the jury to pass upon.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.