COX *v.* HARDEE, receiver. ENTELMAN *v.* HARDEE, receiver.

KNIGHT *v.* HARDEE, receiver. NORTON *v.* HARDEE, receiver.

1. Suit was brought by a receiver of a corporation against stockholders thereof, to recover against each the amount alleged to be still due upon his subscription, it appearing from the petition that the debts due by the corporation and which it was unable to pay were more than the sum of the separate amounts alleged to be due by the defendants respectively, so as to necessitate the recovery against each defendant of the whole amount alleged to be due by him. Several of the defendants separately demurred to the petition, each demurrer being overruled; and each of the demurrants separately excepted. *Held:* that it furnished no ground for a motion to dismiss the several writs of error that each demurrant separately excepted and did not join the other defendants in the case in his bill of exceptions, or serve them therewith.

(*a*) In such a case no question of contribution between the defendants appeared from the face of the petition to exist, nor any reason requiring that all of the defendants be made parties to each bill of exceptions.

2. The fact that it appeared from the petition that another corporation subscribed for a number of shares of stock in the corporation of which the plaintiff is receiver, and that without this subscription the amount of capital stock necessary, under the subscription agreement, to make the subscriptions binding upon the subscribers would not be complete, did not render the other subscriptions invalid.

(*a*) There was nothing in the petition which even indicated that the subscribing corporation was not authorized by its charter to make the subscription, and moreover there was nothing to show that it had not paid for the stock for which it subscribed.

(*b*) One who subscribed for stock in a proposed corporation, with knowledge that a portion of the capital stock thereof had already been subscribed for by another corporation, was not, when sued for the amount of his subscription, in a position to question the validity of the subscription made by the corporation.

3. Certain persons became subscribers to the stock of a proposed corporation, by signing a written agreement which provided that its capital stock should be a given sum, that the subscriptions thereto should be payable in four equal installments at designated times, and that they were made upon the express condition that the first installment should not be called for until the entire amount of the capital stock had been subscribed. The capital stock, as provided for in the agreement, was fully subscribed. The corporation was organized and became insolvent, and its assets were placed in the hands of a receiver, who, under authority conferred upon him by the court, brought suit against a number of the subscribers to recover against each the amount alleged to be due upon his subscription: *Held,* that although a subscriber had paid no part of his subscription, no notice to him that the full amount of the capital stock had been subscribed was necessary in order to render him liable for the amount of his subscription, nor was such notice required before the receiver could lawfully institute suit against him to recover the same.

4. No provision having been made for an apportionment of the stock among the subscribers in the event of over-subscription, subscriptions made after the full amount thereof had been subscribed were void.

5. While a decision overruling a demurrer to a petition may be brought to this court for review, without waiting for the final termination of the case in the court below, when the "judgment complained of, if it had been rendered as claimed by the defendant in error, would have been a final disposition of the cause," the plaintiff in error in such a case can not, in his bill of exceptions, properly also except to a decision striking his answer or a portion thereof.

AUGUST 12, 1910. REHEARING DENIED SEPTEMBER 20, 1910.

Complaint. Before Judge Charlton. Chatham superior court. June 7, July 6, 1909.

*Jacob Gazan, O'Byrne, Hartridge & Wright, Hitch & Denmark, Osborne & Lawrence,* and *Edmund H Abrahams,* for plaintiff in error. *Edward S. Elliott,* contra.

FISH, C. J. W. P. Hardee, as receiver of the Savannah Sand Lime Brick Company, brought an equitable petition against Charles A. Cox, A. H. Entelman, W. E. Norton, J. N. Knight, and nine other persons, to recover against each of the defendants, severally and separately; the amount alleged to be due by him as a subscriber to the capital stock of the company. The substance of the petition, after certain amendments thereto were allowed, so far as now material, was as follows: The Savannah Sand Lime Brick Company was duly incorporated by the superior court of Chatham county, on July 22, 1905, a copy of the charter being attached to plaintiff's petition and made a part thereof. The incorporators of the company were Charles A. Cox, A. H. Entelman, and other named persons. The minimum amount of the capital stock authorized by the charter was $30,000, each share of stock being of the par value of $100. On or about July 22, 1905, the defendants severally subscribed for various amounts of the capital stock, the amount subscribed for and the sum still due upon the subscription by each defendant being stated. Charles A. Cox and J. N. Knight each subscribed for five shares of the capital stock of the company, and A. H. Entelman for two shares, and neither of these defendants has paid anything upon his subscription. W. E. Norton subscribed for ten shares, for $1,000.00, and paid only $500.00. There were also allegations as to the number of shares subscribed for by each of the other defendants, and as to amounts paid by some of them upon their respective subscriptions. The corporation is insolvent, the

6

debts which it is unable to pay amounting to not less than $20,000 or other large sum. It owes the Commercial Bank of Savannah $20,935, and the American Sand Lime Brick Company $3,615.64. On November 24, 1908, petitioner, as receiver, was directed to collect any amount that might be due to the company, and to bring suit therefor if necessary, a copy of the order of the court in this respect being attached to the petition. Petitioner has demanded of each of the defendants the sum due by him, and each of them has failed and refused to pay such sum or any part thereof. The company accepted the charter and organized on August 1, 1905. Petitioner is without an adequate remedy at law, and brings this petition to avoid a multiplicity of suits and in order that complete equity may be done. Attached to the petition and made a part thereof was a copy of the subscription agreement, which was as follows:

"We, the undersigned, hereby subscribe our names as members and shareholders of the Savannah Sand Lime Brick Company, with a capital stock of $30,000, divided into shares of $100 each, setting opposite our respective names the number of shares to be taken and paid for by each subscriber hereto, the same to be paid as follows: 25 per cent. on signing the contract, after charter has been obtained about July 15th, 1905; 25 per cent. on August 1st, 1905; 25 per cent. on October 1st, 1905; and 25 per cent. on December 1st, 1905. This subscription is made on the following express conditions: 1st. That the first installment of 25 per cent. shall not be called for until the whole of the entire amount of $30,000 shall have been subscribed, and then the remaining installments shall be paid as above specified. 2nd. That a majority of the stockholders representing a majority of the capital stock of this company shall be satisfied, with all reasonable tests made, with the quality of the brick made by this process, to their entire satisfaction." Then followed the names of the subscribers, with the number of shares subscribed for by each placed opposite his name. It appeared from this copy of the subscription agreement that Charles A. Cox and J. N. Knight each subscribed for five shares, W. E. Norton for ten shares, and A. H. Entelman for two shares, and that the "Empire Investment Company" subscribed for fifty shares. It was alleged that the conditions set forth in this agreement were fulfilled as follows: "The sum of $30,000 was subscribed for stock as set forth in said contract

on or about the 22nd of July, 1905; a majority of the stockholders representing a majority of the capital stock of said company were satisfied with all reasonable tests made on or about Sept. 7, 1905, with the quality of brick made by the process intended by the words 'this process' in said subscription contract, meaning the said sand lime brick process, to their entire satisfaction, the process adopted being the American Sand Lime Brick System."

The prayers were, that petitioner have judgment against the several defendants for the amount due by each, with interest, that the corporation be made a party defendant to the suit, that process issue, etc., and for such other and further relief as might be meet and proper in the premises.

Cox demurred to the petition upon various general and special grounds, and, subject to the demurrer, filed his answer. The plaintiff demurred to this answer and moved to strike it, specially demurring to certain paragraphs thereof. The court overruled the demurrer to the petition, and sustained the plaintiff's demurrer as to certain paragraphs of defendant's answer and struck these paragraphs. Defendant Cox excepted to the judgment overruling his demurrer to the petition, and in his bill of exceptions also assigns error upon the ruling striking given portions, or paragraphs, of his answer. In the Supreme Court Cox abandoned his exception to the judgment overruling his demurrer to the petition, except as to the overruling of the grounds of the demurrer numbered 1, 5, and 6, which were as follows: (1) The petition does not set forth any cause of action against this defendant. (5) "It is nowhere alleged in said petition that the Savannah Sand Lime Brick Company, or any of its officers or agents, notified this defendant, . . that the amount of $30,000 capital stock had been subscribed, it appearing from said alleged copy of subscription list that the subscriptions were not binding until the said sum of $30,000 had been subscribed." (6) "It is not alleged in said petition that any of the conditions of said alleged subscription list were complied with."

Defendant Entelman demurred to the petition both generally and specially. His demurrer was also overruled, and he too sued out a bill of exceptions, wherein he complains of this ruling. The only grounds of demurrer which he insists upon in this court are the same as those above set forth from the demurrer of the defendant Cox, other grounds being expressly abandoned. We will state here,

however, that it does not appear from the record in the case made by the Entelman bill of exceptions that he demurred upon the ground that the corporation never notified him that the capital stock of $30,000 had been subscribed. Defendants Norton and Knight each separately demurred to the petition upon various grounds, and both of the demurrers were overruled; and each of these defendants sued out a bill of exceptions, complaining of the overruling of his demurrer. Each of them demurred upon the ground that it appeared from the subscription agreement set forth by the petition that the total amount of the capital stock of the corporation, as provided for by the agreement, had been subscribed before he signed such agreement, and therefore his subscription was not binding upon the corporation or himself. In the view which we have taken of this ground of demurrer, it is unnecessary to deal with or to mention any other urged by either of these parties.

1. In each of these four cases there is a motion to dismiss the writ of error, because the plaintiff in error, who it appears was one of a number of defendants in the trial court, has brought the case to this court by a separate writ of error, and because he has not made the other defendants in the court below parties to the cause in this court. This motion must be overruled. Each of the respective plaintiffs in error separately demurred to the petition in the trial court, his demurrer was overruled, and he thereupon sued out a bill of exceptions wherein he complained of such ruling. So the question here raised is controlled by the decision in *Jones* v. *Hurst,* 91 *Ga.* 338 (17 S. E. 635), where it was held: "Where a petition is filed against several defendants, and a separate demurrer thereto by one or more of them is overruled, the remaining defendants need not be made parties to, or be served with a copy of, a bill of exceptions assigning as error the overruling of the demurrer mentioned." It is contended by counsel for defendant in error, that, under the right of contribution which exists between subscribers to the capital stock of a corporation, who, upon its insolvency, are, for the purpose of paying the corporate debts, sued for the amounts respectively due by them upon their subscriptions, all those who were defendants in the trial court were, by reason of interest in the ruling complained of, necessary parties to the cause in this court. It is unnecessary to discuss this contention further than to say that it appears from the allegations of the petition that no

question of contribution can arise in the case, as the amount of the indebtedness of the corporation which it can not pay is far in excess of the aggregate amount of the unpaid subscriptions to its capital stock.

2. It will be seen, from the preceding statement of facts, that the fifth and sixth grounds of the demurrer of the defendant Cox are simply amplifications of the general grounds that no cause of action against him is stated in the petition, and merely serve to point out alleged defects in the petition upon which this main contention is based. This seems to be the view taken by counsel for the plaintiff in error in his argument and brief in this court, the three grounds being argued together, and the contention being, that no cause of action is set forth in the petition, because the subscription agreement which was signed by Cox and others was, as shown by the copy thereof attached to the petition, predicated upon certain conditions which the petition does not show were fulfilled, and that notice to the defendant of the performance of the condition as to the amount of capital stock which should be subscribed, in order to make the subscriptions binding, was necessary before he would be bound by his subscription. The first condition was, "That that the first installment of 25 per cent. shall not be called for until the whole of the entire amount of $30,000 shall have been subscribed, as above specified." It is contended, that the petition shows that this condition was not complied with, because it appears from the subscription list or contract that the "Empire Investment Company subscribed for 50 shares of the capital stock of the Savannah Sand Lime Brick Company; and that the name "Empire Investment Company" imports a corporation, and a corporation, unless expressly authorized by its charter so to do, has no power to purchase and hold stock in another corporation, and therefore the subscription by the "Empire Investment Company" was invalid and unenforceable; and that, as the subscription list shows, unless the subscription of the Empire Investment Company is included in the computation as to the amount of stock subscribed, less than $30,000 was subscribed, and hence the first subscription condition was not complied with. We think it does appear from the subscription list that the Empire Investment Company is a corporation, as its name tends to indicate this, and the signature of the company purports to have made "by John F. Tietjen, Presi-

dent, and Allen Sweat, Treasurer." It is also true that the subscriptions other than that of this company aggregate only $29,800, and so fall short of the sum of $30,000 required by the first condition. But, so far as the petition shows, the Empire Investment Company paid the full amount of its subscription. Indeed, the petition rather tends to indicate that it did, for it is not sued by the receiver, who presumably sued all the delinquent subscribers. If it paid for the stock for which it subscribed, or even for two or more shares of the same, the amount necessary to make up the sum of $30,000 would be complete, without counting the unpaid balance, if any, of its subscription. The Empire Investment Company could not itself sue to cancel its agreement to take and pay for this stock, upon the ground that the contract was ultra vires on its part, if the contract had been fully executed. 10 Cyc. 379; Cincinnati etc. R. Co. *v.* McKeen, 64 Fed. 36 (12 C. C. A. 14); Peterborough R. Co. *v.* Nashua etc. R. Co., 59 N. H. 385. Certainly another subscriber to the stock of the Sand Lime Brick Company will not be heard to question the validity of the subscription of the Empire Investment Company, when it does not appear that the last-mentioned company is itself in a position to repudiate this subscription. The Supreme Court of Illinois has held, that the fact that corporations, without authority, subscribed for the capital stock of another corporation, and against which they could make a defense, does not enable an individual subscriber to evade his own subscription, where he, during the whole proceedings to effect the incorporation, made no objection to any subscription by such corporations, or effort to repudiate his own on that account, and where there is no evidence that the contracts of subscription by the corporations were not performed, or that they had availed themselves of their privilege to deny or repudiate their obligations. McCoy *v.* World's Columbian Exposition, 186 Ill. 356 (57 N. W. 1043, 78 Am. St. R. 288). We know of no law in this State, however, which prohibits granting to private corporations power to purchase and hold stock in other corporations, except that embraced in art. 4, sec. 1, par. 4, of the constitution (Civil Code, § 5800), which simply prohibits the grant of power to a corporation to purchase stock in another corporation, when the purchase may have or be intended to have the effect of defeating or lessening competition or encouraging monopoly. So it can not be determined,

upon general demurrer, from the face of the petition, that the Empire Investment Company had no power to subscribe for and take stock in the Savannah Sand Lime Brick Company. The name "Empire Investment Company" seems to indicate that the corporation bearing it was created for investment purposes, and, so far as the petition demurred to shows, it might have been authorized by its charter to invest in the stock of other non-competitive corporations.

Again, from the copy of the subscription agreement attached to the petition, it appears that Cox and Entelman subscribed for stock in the Savannah Sand Lime Brick Company after the Empire Investment Company had subscribed for stock therein; and as they are presumed to have read the subscription agreement before signing it, they must have seen the name of that company in the list of subscribers when they, respectively, made their subscriptions, it being the second name signed under the subscription agreement. In Cornell's Appeal, 114 Pa. St. 153 (6 Atl. 258), it was held, that where subscriptions to the capital stock of a corporation were made upon condition that a certain amount should be subscribed, and that amount was nominally subscribed, but really not subscribed by reason of the invalidity of some of the subscriptions, those subscribers who became such subsequently to the invalid subscriptions and with knowledge of their character could not set up a failure of the condition in an action to enforce their liability as stockholders. In Cole v. Satsop R. Co., 9 Wash. 487 (37 Pac. 700, 43 Am. St. R. 858), it was held, that where subscribers to the stock of a corporation, with knowledge that some of the stock had been subscribed for by another corporation, paid their subscriptions on some of the stock, they could not, as against creditors, defend an action against them on their subscriptions on the ground that, the subscription of the corporation being invalid, the whole stock was not subscribed for, and therefore they were not liable on their subscriptions. On the same line, it was held in Pacific Mill Co. v. Inman, 46 Or. 352 (80 Pac. 424), that where the defendant and the plaintiff corporation entered into a contract which, among other things, required plaintiff to increase its stock, and to obtain subscriptions to part of it, failure of the defendant, on receiving a list of the subscribers, to object to a subscription purporting to have been made by a corporation was an implied admission that the subscription was gen-

uine. In United States Vinegar Company *v.* Foehrenbach, 148 N. Y. 58 (42 N. E. 403), the court went even further than this, and held, that in an action to recover unpaid subscriptions to the capital stock of a corporation, the defendants can not raise the objection that the capital stock was subscribed for in part by other corporations, and that such subscriptions' were, therefore, invalid. Gray, J., who delivered the opinion, said: "The argument that it appears that the capital stock was subscribed for, in part, by corporations, and that such subscriptions were invalid under the law, is of no avail. That is a question for the people to raise, through their proper officers and in appropriate proceedings. The defendants can not raise it. At the furthest, it might be available in proceedings to vacate the charter,—a point, however, we do not consider." There the action was by a corporation to recover unpaid subscriptions to its capital stock.

3. The contention that the petition failed to set forth a cause of action, because it did not allege that the defendant had been notified by the corporation to whose capital stock he had subscribed, or by any of its officers or agents, that the full amount of $30,000 had been subscribed to its capital stock, as was required in order to render the subscriptions binding, is without merit. It has been held in some jurisdictions that where one subscribes to the capital stock of a corporation upon a given condition, which is subsequently performed, it is necessary, before the corporation can make a "call" upon him for the payment of a part or the whole of the amount embraced in his subscription, that he should be notified of the performance of the condition; and Cook says that while there is some doubt as to whether, upon the performance of the condition, the subscriber is entitled to notice of such performance, the better rule seems to be that he is entitled to such notice. 1 Cook on Stock and Stockholders, § 89. The rule is thus stated in 10 Cyc. 419: "The subscriber is entitled to notice of the condition before an action can be sustained against him on his contract, unless the act be one that carries notice of itself. He will, however, be affected by a general notice to the shareholders." The rule is so stated in 2 Thompson on Corporations (1st ed.), § 1333. Notice of the performance of the condition is, however, not necessary in order to render the subscription binding upon the subscriber. The rule is well established that performance of the condition on the

part of the corporation makes the subscription absolute. 1 Thomp. Corp. (2d ed.), § 609; 10 Cyc. 419; Chase v. Sycamore etc. R. Co., 38 Ill. 215. Whatever may be the rule in regard to giving notice as a preliminary step to making a call, as between a corporation which is a going concern and a subscriber to its stock, it is clear that after the company has failed and its assets have been placed in the hands of a receiver, who has been directed by order of court to bring suit for the purpose of collecting any amount due by any person, thus including unpaid stock subscriptions, a petition in a suit so brought by the receiver to recover the entire amount of unpaid subscriptions is not subject to demurrer on the ground that it does not allege that notice had been given to the subscriber of the compliance by the corporation with the condition of the subscription. The contention that the stipulation that the first installment of twenty-five per cent. upon the stock subscribed for was to be paid "on signing of the contract, after charter has been obtained about July 15, 1905," shows "that the parties contemplated the signing of a contract other than the one sued on, before being bound to take and pay for any stock in said corporation," and therefore can not be held liable upon this subscription agreement, is so obviously without merit as to require no discussion.

4. The demurrers of Norton and Knight should have been sustained, upon the ground, taken in each, that the subscription agreement set forth by the petition shows that the full amount of the capital stock of the corporation, as prescribed in the agreement, had been subscribed by others before the demurrant subscribed for stock in the same, and hence he was not bound by his subscription. The general rule is that after the full amount of the capital stock of a corporation provided for in the charter has been subscribed, any further subscriptions are void. 1 Cook, Stock and Stockholders, § 58. And where, under statutory provisions, commissioners are appointed for the purpose of receiving subscriptions to the capital stock of a corporation, and they receive subscriptions in excess of the amount authorized by the charter or act of incorporation, they can not, in the absence of statutory authority, reduce proportionally all the subscriptions and apportion the stock among the subscribers. Their only duty is to receive subscriptions to the full amount of the prescribed capital, and to refuse anything beyond that. Ib.; 1 Thomp. Corp. (2d ed.), § 578. It is obvious

that none of the subscribers in the present case would have been bound to take stock in the corporation if the amount of its capital stock had been made greater than that which, was provided in the subscription agreement. In the petition for incorporation which was granted it was expressly provided that the amount of the capital stock should be $30,000, the amount fixed in the subscription agreement. We have no statute in this State which provides for the apportionment of the stock of a corporation among the subscribers thereto, in the event the prescribed amount of the capital stock has been oversubscribed; and there is nothing in the subscription agreement under consideration which authorized this to be done. Hence, so far as Norton and Knight were concerned, the subscription agreement could not be enforced, either in whole or in part, by the corporation or by the subscriber.

5. Under the ruling in *Turner* v. *Camp*, 110 *Ga.* 631 (36 S. E. 76), this court has no jurisdiction now to determine whether the court below erred in striking certain paragraphs of the answer of the defendant Cox. In that case it was held: "While the defendant in an action may before its final termination bring to this court for review a decision overruling a demurrer to the plaintiff's petition, because the 'judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause,' such defendant can not, in a bill of exceptions sued out in such a case, properly except also to a decision striking his answer or a part thereof."

*Judgments affirmed in the Cox and Entelman cases, and reversed in the Knight and Norton cases. All the Justices concur, except Beck, J., absent.*