[No. 2033. Aug. 23, 1917.]

## MORRILL v. HARRIS.

### SYLLABUS BY THE COURT.

1.  The articles of incorporation of a corporation are competent evidence to establish, as against such corporation, the recitals contained in such articles as to the number of shares of capital stock which such corporation is authorized to issue, and that the full number of shares had been subscribed for at the time of its incorporation.        P. 149

2.  Where the total authorized capital stock of a banking corporation, organized under section 431, Code 1915, is fully subscribed, it has no power or authority to solicit additional subscriptions to its capital stock, and a note given for such additional subscription to its capital stock is without consideration.        P. 150

3.  Corporate directors and officers have no power to agree with a subscriber to the capital stock of such corporation that his subscription shall be canceled and his note returned, at his request, unless such power is given them by charter or statute, or the by-laws of the corporation.        P. 155

Appeal from District Court, Grant County; Neblett, Judge.

Suit by Charles B. Morrill, receiver of the People's Savings Bank & Trust Company, against Charles S. Harris. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

H. D. Terrell, of Silver City, for appellant.

Original articles of incorporation, showing total stock had been subscribed, were admissible in evidence to show lack of consideration for note involved herein.

Morrill v. Harris, 23 N. M. 146.

8 C. J. Sec. 1339 and cases; Thompson on Corps. Sec. 580; Sec. 431, Code 1915; Thompson v. Reno Sav. Bank, 19 Nev. 103; 1 Cook on Corps. Sec. 58; 10 Cyc. 402; State v. Morristown F. Assn., 23 N. J. L. 195; Peoples v. Roberts, 154 N. Y. 101; Williams v. Western Union Co., 93 N. Y. 162; Penobscot R. Co. v. Drummer, 40 Me. 172; Marlborough Branch R. Co. v. Arnold, 9 Gray (Mass.) 159.

Wilson & Walton, of Silver City, for appellee.

Shick v. Citizen's Ent. Co. 15 Ind. App. 329, 44 N. E. 48; Oler v. Baltimore R. Co. 41 Md. 583; Spear v. Crawford, 28 Am. Dec. 513; Thompson Corps. (2d. Ed.) Sec. 560; Busey v. Hooper, 35 Md. 15; Mackey v. Burns, 64 Pac. 485; Butler Univ. v. Scoonover, 5 Am. S. R. 627; Wigmore on Evid. Sec. 17 B; Weidler v. Farmers Bank, 11 S. & R. 134; Kocher v. Bowman, 10 Watts. (Pa.) 128.

## OPINION OF THE COURT.

ROBERTS, J.   On January 21, 1916, appellee, Charles B. Morrill, as receiver of the People's Bank & Trust Company, a banking corporation organized under the laws of the state of New Mexico, instituted this suit in the court below against the appellant to recover on a promissory note given by appellant to the bank on the 4th day of April, 1914. Said note was for the principal sum of $2,500, and was payable on or before the 1st day of January, 1915, with interest. Appellant answered the complaint, admitting he executed and delivered the note to the People's Savings Bank & Trust Company as alleged, denying that the note had not been paid, and as a further defense he set up in detail the facts concerning the execution of the note, alleging that on the 4th day of April, 1914, that the said People's Savings Bank & Trust Company, acting by its agents and officers, George F. Gardner and R. H. Boulware, came to the appellant and fraudulently solicited his subscription for 50 shares of the capital stock of said bank and corporation, and then and there represented to

and agreed with the defendant that if he would subscribe for the said shares of stock and execute the said note, the said bank would not negotiate said note, but would hold and retain the same, and that any time before maturity thereof, if he so desired, he should have the right and privilege to cancel all and any part of said subscription, and thereupon said bank would return to him said promissory note; that the appellant believed and relied upon the representations, and thereupon executed and delivered the note in question; and that thereafter and before maturity of said note, the defendant notified said bank to cancel his subscription and demanded the return of said note, and that thereupon said bank assured him that said subscription would be canceled and his note destroyed. Appellant further set up in his answer a failure of consideration, alleging that the note was executed without any consideration whatever, all of which was known to said bank. Appellee in his reply admitted that the defendant on the 4th day of April, 1914, subscribed for 50 shares of the capital stock of said bank, and that such subscription was the consideration for the note, but denying the other allegations set up in the answer.

Upon the trial appellee introduced in evidence the note and rested. Appellant thereupon placed the receiver on the stand, who identified a certified copy of the articles of incorporation of the People's Bank & Trust Company, found among the papers of the bank. This instrument, among other things, set forth that the authorized amount of capital stock of said bank was $100,000, divided into 4,000 shares of the par value of $25 each; that the amount of capital stock actually subscribed for in good faith at the time of the filing of said articles of incorporation, to wit, February 24, 1914, was $100,000, and $50,000 of the same had been actually paid up in lawful money of the United States and in custody of the persons named as the first board of directors. The articles of incorporation further gave the names and residences of the several shareholders and the number of shares subscribed by each and the number of shares so shown to have been actually subscribed for on February 24 1914, was the tota amount of

capital stock of said bank, to-wit, 4,000 shares. There was an affidavit attached thereto, made by some of the parties applying for the incorporation of the bank, which set forth that the entire capital stock of said bank had been actually subscribed for in good faith and $50,000 of the same had been actually paid in lawful money. The certificate by the corporation commission showed that the articles of incorporation were filed in the office of the state corporation commission January 27, 1914.

The appellant offered the articles of incorporation of said bank in evidence for the purpose of showing that at the time the subscription of appellant was solicited by the officers of the bank, there was no unsubscribed stock, and this being true, the note was wholly without consideration. The appellee objected to the introduction of the said articles in evidence on the ground that there was no issue where this was material. The court sustained the objection to the offer. Appellant also offered evidence substantiating the allegations of his answer relative to the agreement by which he was to have the right to demand a return of the note and a cancellation of the stock. This evidence was stricken upon motion of the appellee. Judgment was rendered for the receiver for the full amount of the note, interest, and principal, from which judgment this appeal is prosecuted.

[1] Two propositions are presented by the appellant, upon which he relies for a reversal. The first is as to the propriety of the action of the court in sustaining the objection to the admission in evidence of the articles of incorporation of the bank. This was offered, as stated, for the purpose of showing that the note was without consideration because the note was given in payment of a subscription to the capital stock of the bank, and said articles showed that prior to the soliciting of the subscription all the capital stock of the bank had been subscribed for by others. In answer to appellant's contention that the articles were properly admissible in evidence as proof of such fact, appellees argue that the greatest weight that could be given to the articles of incorporation as a document of evi-

dence would be as an indication that the total authorized capital stock had been subscribed for, and granting that upon admission in evidence, the certificates had shown such total subscription, the question now is whether any further subscriptions would be founded upon consideration. We believe that the court should have admitted the articles of incorporation in evidence, and that such articles would establish prima facie the facts therein stated. In 1 Thompson on Corporations, § 580, it is said:

"Proof of subscriptions to the capital stock of a corporation is not essentially different from that of the execution of other written instruments. Ordinarily such proof is made by introducing in evidence the articles of the association containing the signature of the subscribers or the subscription list or book."

Here the articles were offered in evidence, not for the purpose of binding the subscriber, but for the purpose of showing as against the corporation that all its capital stock had been subscribed for prior to the subscription by appellant, which was the consideration for the note.

[2] The bank in question was incorporated under the provisions of section 431, Code 1915, under which it was required to have a capital stock actually subscribed for of not less than $100,000, $50,000 of which must be actually paid up in lawful money of the United States at the time of the incorporation of the bank. The act of which such section forms a part makes no provision for oversubscription, or for the cancellation by the bank of any subscription theretofore made. A later section applicable to banking corporations (section 909, Code 1915) provides a procedure where a subscriber fails to take and pay for stock subscribed by him which contemplates a public sale by the corporation of the stock so situated. Hence we see that a bank organized under this section had no power to solicit additional subscriptions after its capital stock had once been subscribed, and certainly the bank would be estopped by its articles of incorporation from denying that its capital stock had not been subscribed for as represented and stated in the articles of incorporation which gave it its life. No case directly in point has been cited, nor have

we been able to find one. The case of Lathrop v. Kneeland, 46 Barb. (N. Y.) 432, is somewhat akin to the present one. That was a case seeking to hold a subscriber to the capital stock of the corporation liable for its debts. The capital stock of the company had all been subscribed for prior to the subscription by the party sought to be charged. The court in discussing the question said:

"The principal place of business of the corporation was in Luzerne county, Pa., and from the testimony it appears that it commenced its business operations there in April, 1865. By the certificate of the organization of the company, which was filed in pursuance of the statute of Pennsylvania under which the company was organized, on the 13th of April, 1865, and which was also produced in evidence, it appears that the capital stock of the company was $50,000, divided into 2,500 shares of $20 each, and that the whole number of shares had then been subscribed and taken, and one-fourth of the whole amount actually paid in. There is nothing to show that any of these shares thus subscribed and taken and partly paid for had ever been forfeited, or in any way transferred, after they were originally taken. The whole stock having been subscribed for and taken, at the time the articles of incorporation were filed and the company became a legal being, it is manifest that subsequent subscribers, by merely writing their names in the corporation books, and affixing a number of shares to their respective names, could acquire no right to any shares of stock, or become by such an act stockholders of the corporation. There was then no stock left for them to take; and as they could get nothing, the subscription would be wholly nugatory. A person who subscribes regularly to the stock of a corporation becomes a stockholder in virtue of his subscription, and especially so after he has paid a portion of his subscription. This was expressly held in Spear v. Crawford, 14 Wend. (N. Y.) 20 (28 Am. Dec. 513). In that case the subscriber had paid no portion of his subscription, nor had he done any act whatever as a stockholder, and yet the court held that he was a stockholder, and as such liable for the debts of the corporation to the amount of the stock subscribed for by him. When the stock is once all taken the corporation has no more at its disposal, unless it shall get back a portion thus taken, by forfeiture. This it is not shown to have done, in the case before us. If it is taken, and none of it forfeited, the only way any person could afterwards acquire any shares, by any possibility, would be by transfer from some one holding stock as an original taker or as transferee. The corporation cannot increase its capital stock at will, in any manner, or to any extent, unless it is authorized to increase by its charter, and then only in the manner prescribed. It is not shown or pretended that the corporation in question had increased its capital, and it will not be presumed to have done so. It appearing from the evidence that

all the capital stock was taken nearly two years before the subscription by the intestate, and there being no evidence of any forfeiture of any stock so taken, or of any transfer to the intestate of any stock, it is not proved that he was a stockholder. There is no evidence to show that he ever held any stock, or that the right to any ever vested in him. The mere fact that he subscribed and gave his note is nothing after the stock had all been taken and the company had no stock which they could issue."

In Cook on Corporations, § 58, the author says:

"In general after the full amount of stock provided for in the act of incorporation has been subscribed, any further subscriptions are void."

If in fact the full amount of the capital stock of the company had been subscribed prior to the solicitation of the appellant's subscription, the bank being without power to issue more stock, additional subscriptions to the capital stock beyond the amount specified in its articles of incorporation was ultra vires and void, and consequently a subscription beyond that sum could not be collected. This is decided by the Supreme Court of Georgia in the case of Clark, Assignee. v. Turner, 73 Ga. 1.

The banking corporation in question would have the right upon compliance with the law, of course, to increase its capital stock, but it would be incumbent upon it, or upon its receiver, to show that it had legally done so. In the case of Cox v. Hardee, 135 Ga. 80, 68 S. E. 932, the action was instituted by the receiver of an insolvent bank against stockholders to recover amounts alleged to be still due upon their subscriptions. Norton and Knight had subscribed for certain stock after the full amount of the capital stock had been subscribed for by others. The court said:

"The demurrers of Norton and Knight should have been sustained, upon the ground, taken in each that the subscription agreement set forth by the petition shows that the full amount of the capital stock of the corporation, as prescribed in the agreement, had been subscribed by others before the demurrant subscribed for stock in the same, and hence he was not bound by his subscription. The general rule is that after the full amount of the capital stock of a corporation provided for in the charter has been subscribed, any further subscriptions are void. 1 Cook, Stock and Stockholders, § 58.

And where, under statutory provisions, commissioners are appointed for the purpose of receiving subscriptions to the capital stock of a corporation, and they receive subscriptions in excess of the amount authorized by the charter or act of incorporation, they cannot, in the absence of statutory authority, reduce proportionally all the subscriptions and apportion the stock among the subscribers. Their only duty is to receive subscriptions to the full amount of the prescribed capital, and to refuse anything beyond that. Id.: 1 Thomp. Corp. (2d Ed.) § 578. It is obvious that none of the subscribers in the present case would have been bound to take stock in the corporation if the amount of its capital stock had been made greater than that which was provided in the subscription agreement. In the petition for incorporation which was granted it was expressly provided that the amount of the capital stock should be $30,000, the amount fixed in the subscription agreement. We have no statute in this state which provides for the apportionment of the stock of a corporation among the subscribers thereto, in the event the prescribed amount of the capital stock has been oversubscribed; and there is nothing in the subscription agreement under consideration which authorized this to be done. Hence, so far as Norton and Knight were concerned, the subscription agreement could not be enforced, either in whole, or in part, by the corporation or by the subscriber."

In the case of M. & S. V. R. R. Co. v. Hildreth, 53. Cal. 123, the action was instituted to recover delinquent stock assessments. The articles of incorporation recited that Hildreth had subscribed for 40 shares of the capital stock of the value of $4,000. The day before the incorporation of the company Hildreth, with many other persons, signed an agreement setting opposite his name $25,-000 as the amount of the stock he would take. The corporation was formed for the purpose of building a railroad. The statute required that at least $1,000 per mile must be subscribed toward the intended railroad before it was incorporated. The court said:

"But it is plain that the amounts subscribed, and by whom, must be fully set forth in the articles of incorporation. Those who sign and file the articles, and thus bring the corporation into existence, act for the real subscribers. If the statement contained in the articles, as to the amount subscribed, and by whom, is incorrect, one of two results must follow: Either the attempt to give existence to the corporation is abortive, or the corporation, which comes into life is estopped from claiming that any other person than those named as subscribers became a member when the articles were filed, or that any person therein named was a subscriber for a larger sum

than that mentioned in the articles. In either event, this action cannot be maintained."

Our statute requires, as stated, that the articles of incorporation shall set forth the amount of stock actually subscribed. It was competent for the appellant to offer in evidence the articles of incorporation for the purpose of establishing the fact that all the stock of the corporation had been subscribed for at the time his subscription was solicited, and upon receipt of these articles in evidence the burden would be upon the receiver of the corporation to explain away if possible the recited facts contained therein. This might be difficult, but, if so, or even if actually impossible, the corporation should not be heard to complain when its own admitted culpability created the dilemma. In 10 Cyc. 44, it is said:

"After all the authorized shares of a corporation have been issued, any further issues are merely void, and the takers of them, athough innocent, do not acquire the status or rights of shareholders. Such a subscriber is not liable on his subscription, and although the president and directors may have power to authorize an additional issue, yet, until they exercise this power any issue after the original limit has been filled is void."

We concede, as contended by appellee, that a mere subscription to the capital stock of the corporation does not make the subscriber a stockholder, but such act, when his subscription is accepted by the corporation, gives him the right, as against the corporation to demand and receive certificates of stock upon compliance by him with the conditions upon which his subscription was made. The corporation acquires certain rights by his subscription. It is a right to demand compliance upon his part of the terms thereof. It can compel him to take and pay for his stock. It has no right to release him from his subscription or to take back and cancel stock issued thereunder. Where a subscriber fails to comply with the terms of his subscription and to meet the calls made by the corporation thereon, the statute provides the remedy by the corporation. It is the duty of the corporation under the statute to sell the stock so forfeited at public sale. It has no right under the statute to go out and solicit subscriptions for such

stock, and other stockholders could complain of the act of the corporation in failing to comply with the statutory provisions in regard to the sale. For the error in rejecting the offered proof, the case must be reversed, but we deem it advisable to discuss the remaining point presented.

[3] The court upon motion withdrew from the jury evidence offered by appellant tending to show an agreement between appellant and the agent of the bank that appellant should have the right to demand a return of the note and a cancellation of the subscription at any time before the note was due. If the corporation had power to accept subscriptions to its capital stock at the time appellant's subscription was accepted and for which he executed the note in question, it would not be competent for appellant as against the representative of the creditors of the bank to show a secret agreement between appellant and the bank that he should have the right to demand a return of his note and the cancellation of the subscription at his option. When appellant became a subscriber to the stock of the bank, presumptively he knew that credit would be extended to the bank upon the faith of the subscriptions of its capital stock. In the case of Atwater v. Stromberg, 75 Minn. 277, 77 N. W. 963, the court said:

"If the defendant can now be allowed to evade the payment of his note given for the stock shares, he might with equal propriety be permitted to deny that he became a stockholder, and thus perpetrate a fraud upon creditors. The stockholders of a corporation cannot directly or indirectly release themselves or discharge their liability as such by means of agreements with one another or with the corporation. Yet by the writing relied upon by defendant this was the very thing attempted, and, if such a transaction could be tolerated, every stockholder in a bank could protect himself from liability or loss through the medium of a like secret agreement. The statute forbids this, and it is clearly against public policy."

In Cook on Corporations, Sec. 168, it is said:

"The well-established rule, however, is that corporate directors have no power to agree with a subscriber that his subscription shall be canceled, unless such power is given to them by charter, or statute or the by-laws of the corporation."

See also 10 Cyc. 450.

Hence the court committed no error in rejecting this evidence, but for the reasons stated, the cause will be reversed and remanded to the district court for further proceedings not inconsistent with this opinion, and it is so ordered.

HANNA, C. J., and PARKER, J., concur.