F. J. SPAIN, administrator, plaintiff in error, *vs.* W. H. BEACH & SON, defendants in error.

W. H. BEACH & SON, plaintiffs in error, *vs.* F. J. SPAIN, administrator, defendant in error.

1. A, the agent of B, having in hand certain money belonging to B, deposited it in bank to his own credit, he having already a credit there to himself, whereupon a creditor of A garnished the bank. B filed a claim affidavit and bond under the act of 1871,.Code, sections 3541, 3543, and his money was paid him on A's. check. A dissolved the garnishment in the usual mode, and got the balance on his own check : *Held*, that B might assert his right to the money in this way.

2. The claim affidavit was a sufficient traverse of the garnishee's answer, which merely set forth A's account, and that the money had been paid out after the filing of the claim, and after A's dissolution of the garnishment.

3. The plaintiff in the garnishment proceedings had no right, after a finding by the jury for B on the claim, to any judgment on B's bond. His remedy for the balance of the money was by a judgment against A, and his security on his bond to dissolve the garnishment.

Garnishment. Claim. Debtor and creditor. Before Judge GIBSON. Chatham Superior Court. February Term, 1874.

F. J. Spain, as administrator upon the estate of J. W. Spain, deceased, held a judgment against one Adam Dutenhofer. Garnishment process was issued thereon, and was served on Wallace Cumming·& Company. Under the provisions of the act of December 14th, 1871, W. H. Beach & Son entered a claim for $1,002 50, it being a portion of the amount held by the garnishees. This sum was paid to claimants on the check of Dutenhofer. Subsequently the latter dissolved the garnishment, and received on his own check $336 24, the balance in the hands of Cumming & Company. The garnishees answered that they were bankers in the city of Savannah ; that at the time of the service of the aforesaid process of garnishment upon them, there was to the credit of Adam Dutenhofer, in their hands, on general deposit account, the sum of $1,338 74; that this sum had since been drawn out on his check, in the manner hereinbefore indicated, to-wit:

Spain *vs.* Beach & Son.

on the claim of Beach & Son, and the dissolution of the garnishment by Dutenhofer. This answer was never traversed.

Upon the call of the claim case, plaintiff moved for a judgment on the claim bond, there being no traverse of the answer of the garnishee. This motion was overruled, and plaintiff excepted.

Over the objection of plaintiff, claimants introduced testimony showing the following facts: On the day of the service of the process of garnishment, claimants entrusted Dutenhofer with a draft on New York belonging to them, to have discounted for their benefit. He discounted said paper, and received therefor, in currency, $1,002 50, which he deposited with Cumming & Company to his own credit. He gave a check to the claimants for this amount, but it was not presented for payment until after the service of the process of garnishment, though it was believed to have been given before.

The court charged the jury, " that if they believed that the draft discounted by Dutenhofer was the property of W. H. Beach & Son, then the money placed in the banking house of W. Cumming & Company by Dutenhofer, arising from the sale of said draft, was subject to be claimed by W. H. Beach & Son., and the claim was good as to the $1,002 50 so placed in the bank by Dutenhofer, it being the money of W. H. Beach & Son."

The jury found for the claimants as to the $1,002 50. Whereupon the plaintiff moved for a new trial, because of alleged error in the court in overruling the aforesaid motion, in the admission of testimony as above stated, and in its charge. The motion was overruled, and the plaintiff excepted.

After the rendition of the verdict aforesaid, plaintiff moved to be allowed to enter judgment on the claim bond for $336 26, the balance admitted to have been in the hands of the garnishees over the sum claimed. This the court allowed, and claimants excepted.

T. M. NORWOOD ; HENRY B. THOMPKINS, for plaintiff in error in the first case, and for defendant in the second.

HARTRIDGE & CHISOLM, for defendants in error in the first case, and for plaintiffs in the second.

McCAY, Judge.

1. It is unquestionably true that under the authorities a deposit of money on general deposit in a bank is a *loan* to the bank by the depositor, and is not distinguishable by any clear mark from an ordinary loan of money by one man to another, payable on demand. But in this case the depositor was not the owner of the money. He had got it only a few hours before as the agent of the claimant; he held it as such agent, and it is clear from the testimony that he did not intend to appropriate it to his own use, but simply left it on deposit, temporarily, for convenience and safety. In other words, he lent the money to the bank as the agent of the claimant, though he did not disclose to the bank that he was acting as such agent. In such cases, to-wit: where an agent makes a simple contract for the benefit of his principal, though he act in his own name and do not disclose that he is acting as agent, either the principal or the agent may sue, even at law, on the contract: Code, 2197 and 2204. This doctrine is fully discussed in the case of Sims *vs.* Bond, 5 B. & Ad., 389, which case was, in some respects, very like this. The court there held that the principal could not sue, but it was put on the distinct ground that the depositor, who was one of a firm to which the money belonged, and who was dead at the time of bringing the suit by the survivor, did not appear to have been *acting* for the firm in making the deposit. He had a right to apply the money to his own use, and nothing appeared to show that he did not so intend. So in the case of Tassel *vs.* Cooper, 9 C. B., 509. The deposit was evidently a conversion, and so intended. These cases, too, were both cases at law. The rule is far broader in chancery. Equity looks to the truth of a case, and will follow a trust through all its windings, so long as it is possible to trace it: 2 Story E., section 1259. The case of Pennel *vs.* Deffel, 23 Eng. Law and

Equity, 460, was a case of a deposit by a trustee of trust funds in a bank to his own credit. The trustee had in bank other deposits of his own, and on the books of the bank there was no distinction, yet the court held that the true owner could follow the fund. As each check, when paid, was a charge on the deposits in the order in which they were made, it was possible to tell, by comparing the dates of the deposits and the checks, whether or not the trust fund was still there. What one could do by filing a bill he may do here, by proceeding at law.

This very question has been elaborately discussed in Pennsylvania. A case was read and relied on in the argument, to-wit: the case of Jackson *vs.* The Bank of the United States, 10 Barr., 61, which seems at first sight to be contrary to what we now hold. But, upon close inspection, it will be found that this is not true. That case went on the ground of estoppel, to-wit: that the *bank* could not be permitted, after the summons of garnishment was served, to pay the money out to the depositor and then set up that the depositor was only an agent. The bank was estopped by its own books. The true owner was not a party to the litigation. Had he been there, the court clearly intimated that they would have respected his rights. Subsequent cases in the same state, to-wit: Stair *vs.* York Nat. Bank, 5, P. F. Smith, 364; F. & M. Bank *vs.* King, 57 Penn., 206; Frazier *vs.* The Erie Bank, 8 Watts and Sergeant, 18, while they recognize the case in 10 Barr., 61, a good law, under its special facts, lay down the broad doctrine that if an agent deposit the money of his principal in bank in his own name, not disclosing his principal, the true owner may sue in his own name and recover it. In the last case, which was in its facts almost the counterpart of the case at bar, Judge STRONG discusses the whole subject, and lays down the rule as we understand it. It may be fairly said, too, that the act of 1871, under which this proceeding is taken, seems to have almost, in terms, contemplated a case like the present. The language is "property or money": section 1. Again, section 3 says: "the claimant of any fund or pro-

perty." Again, section 2 : the garnishee shall " pay" over, or deliver. But, independently of these expressions, which contemplate clearly something more than a special deposit, we think that under that provision of our Code which declares that a party shall not be compelled to go into equity, but may proceed at law if he think fit, we should apply the principles laid down in Pennel vs. Deffel, 23, E. L. & E. Reps. Same case, 4 DeG. M. & G., 389. Judge STRONG, in the case in 57 Pennsylvania State Reports, says, finally : " A deposit in a bank, then, does not change the property in trust funds deposited by a trustee. The trustee may become a creditor of the bank, but he holds the contract in trust, as he held the money before. It is not applicable to the payment of his debts to a general creditor, and a creditor who attaches the debts due from the bank to him can be in no better condition than the depositor. At most he becomes a statutory assignee of a naked legal right with the beneficial ownership in another." And this, we think, is specially applicable to the general principles of our law, which recognizes, even at law, a perfect equity as the same thing as a legal right.

2. The act of 1871, under which this proceeding was had, has not been before this court for construction. It introduces a new method of proceeding, and not unnaturally there will arise. cases coming within its scope, when its provisions will be acknowledged, and when it will be the duty of the courts to administer its spirit rather than its letter. It is contended in this case that as there was no traverse of the garnishee's answer, the plaintiff was entitled, by the terms of the claimant's bond, to a judgment for the full amount in the garnishee's hands. According to the letter of the act, the claimant, in the first instance, is not required to make any affidavit. And if he does not do this, a traverse by him of the garnishee's answer, if the garnishee admits he has effects, would seem to be necessary in order to get an issue. In this case the claimant made an affidavit when he filed his bond, which is certainly more in harmony with our claim laws. The garnishee states the facts. The truth is, he had nothing in

hand at the filing of the answer, since he had paid it out, as the law required him to do. The affidavit of the claimant was on file denying that the money in the garnishee's hands was the property of the defendant. That was tendering an issue to any statement the garnishee ·might make as to the title of the defendant. And section 3 of the act, which provides that the plaintiff shall have judgment against the claimant " for any amount, or the value of any property, found in the hands of the garnishee *liable to the operation of the said summons* " would seem to be the key to the whole matter, and to define more accurately the meaning of the condition of the bond. We think, therefore, that the affidavit of the claimant is a sufficient traverse of the garnishee's answer, if it in fact need a traverse, only stating as it does the facts, without asserting who is the true owner. Substantially, the affidavit of the claimant makes an issue with the answer, and we hold that the court was not in error in refusing the judgment asked for against the claimant.

3. The letter of the act of 1871 does not provide for a claim where the claimant only asserts title to a part of the property in the hands of the garnishee. The language used implies that the garnishment is dissolved by the claim, in *toto*. But this is a very narrow construction. No violence is done to the language of the act to construe this word " dissolve" to mean dissolve *pro tanto*. It is so obviously true that the claimant may only claim a portion of the property, that we cannot think it giving full force to the law to limit it to a case where the claimant sets up title to the whole. The reason and spirit and evident purpose of the law will include the case of a claim to a part only of the property on money in the hands of the garnishee. There is no trouble in practice, either, in such a construction. What is unclaimed stands as it stood before. The defendant may dissolve under section 3540, or he may allow the garnishee to answer without dissolving. In the former case, which is the case at bar, the remedy of the plaintiff is to proceed as to the balance, as though there had been no claim, to-wit: to enter up judgment against the defendant

.and his security on the bond they gave to dissolve the garnish-ment, as to what remained in the garnishee's hands after the *pro tanto* dissolution by the claimant. We think, therefore, the court erred in giving judgment against the claimant for this balance.

Judgment affirmed in the first case, and reversed in the second.