## MORGAN COUNTY BANK *v.* POULLAIN.

1. The Supreme Court, in giving instructions upon questions certified by the Court of Appeals, will in all cases confine the answer to the precise point involved in the question propounded, and make answer only to the exact question asked, without reference to what might be a possibly different answer were a different question presented.

(a) It is the right and duty of the Court of Appeals to finally adjudicate the cause in which instruction is asked as to questions of law only. The application and the applicability of the law to the facts of each particular case is solely for the determination of the Court of Appeals. That court knows and must determine the precise point as to which they desire instructions, and no instance can arise in which the Supreme Court would be justified in making answer to any other than the exact question propounded.

2. The lending of money on deposit for a customer and depositor by a bank in this State at his instance and as his agent is not necessarily ultra vires. An agency to lend the money of one of its customers in his name and in his behalf in good faith and using ordinary diligence as an agent is within the range of the legitimate business of a bank, unless expressly prohibited by its charter, and is an incidental power of the bank when deemed expedient to be exercised in the course of its business.

3. The nature of the answer to the first question and the form of the second and third questions render any answer to the second and third questions unnecessary and amount to a practical withdrawal of these questions.

4. A ground of a motion for new trial complaining of the rejection of testimony offered by the movant, where the motion for a new trial fails to show upon what grounds the testimony was excluded or that the judge ·rejected it upon his own motion, is not too defective to be considered by the reviewing court.

No. 3778.  FEBRUARY 12, 1924.

Question certified by Court of Appeals (Case No. 13747).

*E. H. George* and *Anderson & Wood,* for plaintiff in error.

*Johnson & Foster,* contra.

RUSSELL, C. J.  The Court of Appeals desires instructions upon the following questions:

"1.  It is conceded that there is no *express* power conferred upon ordinary State banks in Georgia (and the defendant in this case was such a bank), either under the general law prior to the banking act of 1919 or by that act, *authorizing* them to act as agents for their depositors or others in lending money.  It is also conceded that there is no *express* prohibition *denying* them such a right. There being, therefore, no express prohibition in the general law or the charter of the defendant bank which would prevent the bank from acting as agent for another in lending money, would the lending of money by the bank as the agent of and in behalf of another be an ultra vires act, or would it be an *incidental* power of the bank when deemed expedient to be exercised in the course of its business?

"2.  If the answer to the immediately preceding question be that such lending of money by the bank is an ultra vires act, then an answer is requested to the following question:  Can a State bank escape liability by setting up and proving that a particular transaction was ultra vires, where it has received some benefit therefrom, or where the contract has been fully executed by the other party and is not of itself unlawful, immoral, or against public policy?  See, in this connection, *Towers Excelsior Co.* v. *Inman, 96 Ga.* 506 [23 S. E. 418]; *Cox* v. *Hardee, 135 Ga.* 80, 86 [68 S. E. 932]; 14A C. J. 326.

"3.  If the immediately preceding question is answered in the negative, then an answer to the following question is requested: Where a person enters into an agreement or contract with a State

bank, by which he agrees to place large sums of money on deposit with the bank, and the bank agrees to act as his agent in lending the money for him, would the actual sending of the money by him and the receiving of the same by the bank, and the subsequent lending of the money by the bank as his agent, render the contract fully executed as to either party or both of them?

"4. Is a ground of a motion for a new trial, complaining of the rejection of testimony offered by the movant, too defective to be considered by the reviewing court, where the motion for a new trial fails to show upon what ground the testimony was excluded, or that the judge rejected it upon his own motion? See *Steed* v. *Cruise*, 70 *Ga.* 168 (4); *Devoe* v. *Best Motor Co.*, 27 *Ga. App.* 619 (1) [109 S. E. 689], and citations."

It will be noted that the first question is confined to one point: whether the lending of money by a State bank as agent for and in behalf of one who may wish the bank to make safe loans for him out of his money is an *incidental* power when deemed expedient to be exercised in the course of its business, or whether an agreement on the part of the bank to perform the service of lending the money of another in his name and for his benefit is an ultra vires act.

A bank, so far as its relation to the public is concerned, is chartered for the purpose of facilitating financial transactions in the community in which it is located, and so far as affects the rights of its shareholders and depositors it is charged with the duty of exercising all ordinary care and business prudence which can make or ensure the safety of its business and preservation of the money of both the depositors and the shareholders. It is conceded that there is no express power conferred upon State banks in Georgia which authorizes them to act as agent for others in lending money. However, on the contrary, there is no express prohibition denying them such a right. From the nature of the first question certain facts must be assumed. The transaction under investigation was one in which the bank, as a bank, and not the cashier individually, undertook to lend the money of Poullain as his agent and for his benefit, taking all evidences of debt and the security therefor in his name and not in the name of the bank. This, then, must be understood as an agency on the part of the bank to perform for Poullain the service of safely lending his money, which would im-

pose on the bank the duty of ordinary diligence and the exercise of good faith in protecting the interests of Poullain, its principal. If so, the bank would be liable only in case it failed to perform its duty as above stated. Is such an agency, it being stated in the question that there is no express provision in the charter of the bank denying the exercise of such power, within the scope of its business, so that it may be said to be an "incidental power of the bank when deemed expedient [by it] to be exercised in the course of its business." In determining whether any act is incidental to any profession, business, or calling, we naturally look to surroundings and take into consideration the general and usual manner in which the particular business operates where it is conducted within this State. This is not an exclusive guide, but it tends to throw light upon the meaning of the words employed in the question. It is well known that the profits of banks depend largely upon their deposits; and as banks may use any honest and lawful means within the scope of legitimate banking business to increase their deposits, certainly this would be an incidental power appertaining to every State bank. Many banks which perform valuable service in the communities in which they are located, and are extremely useful in the sale of agricultural and manufactured products, could not possibly be carried on but by the deposits of their customers. If a deposit of large sums seeking investment in interest-bearing notes cannot be obtained unless the bank accept the agency for lending this money for and in behalf of the depositor as occasion may arise, will not the incident be one beneficial to the bank and therefore incidental to its successful business by accepting the agency and giving the customer the benefit of its knowledge of probable borrowers and of the security offered by them and of its skill as a banker? We think so. In the case of a contract of this nature there will be no guarantee on the part of the bank that the loan will be collected. The agency does not involve any warranty as to the loan. The bank simply undertakes to become the agent of the depositor, to deal with him in good faith, and to use ordinary diligence—at most no more diligence than the bank would use in lending its own money—in lending the money of its principal. We think there can be no question that a bank in Georgia when it thinks such a transaction is to the best interest of its business is not prohibited and is permitted to act as agent for the

purpose of lending money of others at their instance and request. Of course the foregoing statement has no reference whatever to a lending of moneys deposited on call, without any authority from the depositor.

The exact point now before us seems not to have been presented heretofore to this court. For myself, I think the reason can be found in the fact that this agency has always been recognized as a power incidental to the State banking business, unless the charter of a particular bank prohibits it. However, in other jurisdictions the rule seems well settled that the performance of such duties as we are now considering is a power incidental to State banks. Bobb v. Savings Bank of Louisville, 23 Ky. L. R. 817 (64 S. W. 494); 3 Am. & Eng. Enc. L. 801; 2 Michie on Banks and Banking, 1628, § 195). "The lending of money on deposit for a customer is within the range of the legitimate business of a bank, unless prohibited by its charter." 7 C. J. 719. See also Chapman v. First National Bank, 72 Or. 492 (143 Pac. 630, L. R. A. 1917F, 300); Simpson v. First National Bank, 94 Or. 147 (185 Pac. 913); Wycoff v. Irvine, 6 Minn. 496 (80 Am. D. 461). We are of the opinion that the lending of the money of another as his agent and for a consideration is such an act as may properly be incidental to the conduct of the banking business; and for that reason the first question is answered in the affirmative.

3. Since the second question is not to be answered unless the answer to the preceding question is that such lending of money by the bank is an ultra vires act, and an answer to the third question is not requested unless a negative answer is given to the second question, an answer is not required to either the second or third questions; and under the ruling in *Georgian Co.* v. *Jones,* 154 *Ga.* 762 (115 S. E. 490), the answer of this court to a certified question must be precisely confined to the question propounded, no answer will be made to questions two and three.

4. The fourth question in our opinion should be answered in the negative. That question is, "Is a ground of a motion for a new trial, complaining of the *rejection* of testimony offered by the *movant,* too defective to be considered by the reviewing court, where the motion for a new trial fails to show upon what grounds the testimony was excluded, or that the judge rejected it upon his own motion?" The question is restricted to one point. We

do not know whether the ground referred to is or may not be defective for some other reason, but, answering the precise question, we unhesitatingly hold that such a ground as that referred to in the question is not "too defective" because evidence which has been "offered by the movant" may be rejected or excluded by the court upon the motion of the opposite party or by the judge upon his own motion. There is a very clear distinction between the case stated in the question propounded and a case where upon the movant's own motion the evidence is rejected or excluded. In the latter case (where the complaint is that evidence has been admitted to which the movant himself objected) the numerous rulings of this court requiring that the objection made at the time the evidence was offered must be plainly and distinctly stated do not rest primarily and alone upon the rule that he who assigns error must show error. There is a greater reason for this requirement in such a case, which has been frequently pointed out. It is a rule of fairness to the lower court. He who *objects to the admission* of testimony must give the trial court the opportunity of adjudging the merits and sufficiency of his objections, and he must apprise the court of the exact nature of his objections, so that a reviewing court can see whether he erred upon the objection as made,—not upon some objection which was never suggested to him. For this reason it has been held by this court that evidence will not be excluded in the trial court upon such a mere statement as "I object." But the case is altogether different where one who is *not objecting,* but who on the contrary is urging the admissibility of testimony which *he wishes to introduce,* meets the fate of having this testimony excluded upon the objection of his adversary, or by the court of its own motion. In such a case the movant cannot possibly know, if the judge of his own motion excluded the testimony, what was the reason for which it was excluded, nor is he responsible for the validity, the sufficiency or insufficiency, or the merits of the objection of his adversary in any respect. It is enough if he states that he was endeavoring to introduce the testimony and the judge excluded it. For example, suppose in the progress of a trial the judge should of his own motion exclude testimony, how could the party who wished the testimony admitted reach a conclusion as to what reason influenced the judge? It is contempt of court to seek to argue a question after the court's decision, and

the movant would be obliged to guess the reason of the judge in completing his assignment of error. In fact the ruling of the judge might for some reason be correct. Counsel might think the testimony was relevant. The judge might agree with him as to that, but would he be required to state that he excluded it because it was hearsay and for that reason objectionable? On the other hand, suppose the only objection made by counsel for the objecting party who wished the testimony to be rejected, and upon whose objection the court rejected it, made only the objection "I object," and the court, although that objection is wholly insufficient, still under some valid different rule of evidence excluded it, would the movant's assignment of error be benefited or strengthened by the statement of an objection as made by his opponent which was wholly insufficient?

The rulings of the Court of Appeals to which reference is made in the question seem to have resulted from a confusion of the well-settled rule that where one complains of evidence to which he objected at the time of the trial and which he insisted should have been excluded, which is to the effect that in such a case there must be a complete statement of the objection actually made at the time of the trial in the lower court, with the proper rule in a case where one who is himself not objecting to any testimony, but rather urging its admissibility, complains that it was improperly excluded by the court. In our view of the matter it is immaterial whether it was excluded by the court of his own motion or upon the objection of the opposite party to the movant. The result is the same so far as the movant is concerned. His contention is that the evidence he offered is legal. He cannot be expected to know or adjudge what were the reasons that influenced the court to hold otherwise. The matter upon which the court acted was not presented by him as in the case of evidence which the movant thinks was objectionable; and such a ground of a motion for a new trial is not too defective to be considered by a reviewing court where the motion for a new trial fails to show upon what ground the testimony was excluded, where the movant "complained of the rejection of testimony *offered by himself,*" though it would be too defective if the testimony had been offered by his adversary and rejected. The decision of this court (*Steed* v. *Cruise,* 70 *Ga.* 168) to which reference is made itself shows that the rule has no refer-

ence to such an instance as is presented by the pending question. In that decision was perhaps the origin of the rule to which we have already referred, and which has been announced in decisions of this court almost without number, that one who *objects* to the admission of testimony must state fully his objections made at the time of the trial, but which has no reference to a case where one is seeking to have testimony *admitted*.

*All the Justices concur.*