### 13747. MORGAN COUNTY BANK *v.* POULLAIN.

LUKE, J. 1. Under the facts adduced upon the hearing of the motion to have a judge pro hac vice appointed, the trial judge did not err in overruling the motion and holding himself qualified to try the case.

2. The special demurrers to the petition were properly overruled.

3. The main and controlling question in this case was certified to the Supreme Court, and that court held: "The lending of money on deposit for a customer and depositor by a bank in this State at his instance and

as his agent is not necessarily ultra vires. An agency to lend the money of one of its customers in his name and in his behalf in good faith and using ordinary diligence as an agent is within the range of the legitimate business of a bank, unless expressly prohibited by its charter, and is an incidental power of the bank when deemed expedient to be exercised in the course of its business." For a full discussion of this ruling, see 157 *Ga.* 423 (121 S. E. 813). Applying this ruling to the facts adduced upon the trial, there is no merit in either the general grounds of the motion for a new trial or in grounds 22, 25, and 27.

4. A careful examination of the remaining special grounds of the motion for a new trial discloses that they are either too defective to be considered or are without substantial merit; the evidence authorized the verdict, and for no reason assigned was it error to overrule the motion for a new trial.

    *Judgment affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*

    DECIDED APRIL 15, 1924. REHEARING DENIED MAY 13, 1924.

Action for damages; from city court of Madison—Judge Lambert. June 5, 1922.

Application for certiorari was denied by the Supreme Court.

N. L. Poullain sued the Morgan County Bank for damages in the sum of $3850, besides interest thereon. The petition alleged, in substance, that the plaintiff resided in New York and was a depositor and customer of the defendant; that in consideration of his deposits and as an inducement to him to carry deposits with the bank, the bank undertook from time to time to make loans for him from his funds on deposit, to take security for the loans, to collect the principal and interest, and to deposit to his credit on his deposit account the money so collected, and that this course of dealing had been going on for several years before the making of the loans hereinafter mentioned; that because of his nonresidence he knew practically nothing of the financial standing of individuals or of the value of property in Morgan county, and trusted the bank to make only safe and amply secured loans for him; that the bank agreed to do so, and in the making of the loans he was not consulted in advance, and generally he did not know or hear of them until long after they were made; that on February 5, 1919, the bank, out of his funds on deposit with it, lent to W. G. Thompson and H. D. White $2,000, taking their promissory note for that amount, and taking as the only security for its payment a bond for title from Mrs. Lena F. Fitzsimmons to them, whereby she agreed to convey to them certain land on payment of their notes to her (described); that on January 30, 1920, the bank

lent to the same persons $1,850 out of his funds on deposit, taking their note for that amount and interest, and took as the only security for its payment a second transfer of the bond for title described; that at the time of the making of these loans the borrowers were insolvent, that their purchase of the land was a mere speculation, and the banks knew these facts, and knew that the land would not have brought at a fair sale in open market the amount due Mrs. Fitzsimmons on the purchase price, and that the equity of Thompson and White in the land was worthless; that the bank failed to have the bond for title or the transfers thereon recorded until the plaintiff's attorney caused them to be recorded on February 23, 1921, and, so far as any action on the part of the bank was concerned, third persons without notice could have acquired a valid lien or transfer superior to the lien and transfer created by the above-mentioned transfers of the bond for title; that the loans were made without previous consultation with the plaintiff and without his knowledge, and the security was worthless, and the bank knew or by the exercise of ordinary care and diligence could have known these facts; that at the time of the making of the loans the said Thompson was cashier of the bank and its chief managing officer, and the alter ego of the bank, and the making of loans, under the circumstances stated, was tantamount to the bank lending the money to itself, or to a trustee buying at his own sale, and constituted bad faith on the part of the bank; that at the time of the making of the second loan Thompson and White had defaulted in the payment of the first loan, and had paid only $146.66 on it, which the bank placed to plaintiff's credit; that plaintiff did not know of this payment until long afterwards; that the bank knew all the facts recited; that with the exception of this payment of $146.66 nothing has been paid on the notes to plaintiff; that Thompson and White are unable to pay them, and the security taken for the loans is worthless; and by reason of the facts aforesaid the bank has injured and damaged plaintiff in the sum sued for.

The bank demurred: (1) To paragraphs 4, 5, 6, and 7, on the ground that nowhere in the petition is it alleged through what officials the bank acted or made the alleged agreements and promises, and nowhere is it alleged that there was any adequate consideration for the alleged undertaking, the allegation as to the

carrying of deposits not being a sufficient allegation of considera-
tion or inducement, since the amount of the deposit or the period
is nowhere stated; (2) to paragraph 3 because it sets up no facts
on which a recovery can be based, and the allegation that the
plaintiff was a depositor and customer carrying large deposits is
too vague to show adequate consideration for the alleged undertak-
ing; (3) to paragraph 9 because it sets up no facts on which a
recovery can be based.

The verdict was in favor of the plaintiff, for the principal sum
sued for and interest.

The first special ground of the motion for a new trial is as
follows: "When said case was called for trial movant objected
to the judge of the city court presiding at the trial of said case:
(1) because said judge, Hon. E. R. Lambert, was disqualified, for
the reason, as movant contends, that he had been counsel for
plaintiff in this case, had advised him as to the subject-matter of
this case, and received a fee therefor; (2) because said judge . .
was disqualified for the reason, as movant contends, that he was
associated with A. G. Foster, Esq., one of the counsel for plaintiffs,
and had been so associated since he . . became judge of said
court, occupying offices with said Foster, who was then at the trial
so associated and so occupying offices. The court overruled the
objection and held that he was qualified to try said case; to which
ruling defendant in the court below excepted, and now excepts,"
etc. From a note to this ground it appears that evidence consist-
ing of a statement of the judge himself was submitted in connec-
tion with the motion referred to therein. This statement was as
follows: "Some time prior to 1921 the plaintiff in this case . .
employed me as attorney to look through the collateral in his box
in the Morgan County Bank and advise him in connection with
the same. I secured his box from the bank and went through his
papers, and found deposited therein a bond for title given by Mrs.
Lena Fitzsimmons to H. D. White and W. G. Thompson, and
transferred by the latter to N. L. Poullain as security on two
notes. I advised Mr. Poullain that the bond for title should be
recorded, and I also advised him what I thought the real estate
described in the bond for title was worth. I had the bond re-
corded, placed all the papers back in the box, and handed it to his
sister. . . I sent Mr. Poullain a bill for my services, and he

paid me. Later he sought to employ me to collect the money for him,—that is, on the note and bond for title. I advised him that I would represent him, provided he would allow me to bring suit in the superior court, which met twice a year, while the city court met four times a year. He then wrote me that he would rather bring the suit in the city court, and did not employ me. After I became judge I did not use the office provided for me by the county in the court-house. I used an office in the Foster Building; it adjoined Mr. A. G. Foster's office, with a connecting door between. We used offices interchangeably, but I paid my own rent. We made two loans together and were in partnership in those two loans; we may make other loans in partnership, but we have no connection now. I do not remember exactly, but may have recommended to Mr. Poullain that he employ Mr. Foster. Since the fire in the Foster Building I moved to the court-house office provided for the city-court judge by the county. It adjoins the sheriff's office, with a connecting door between. Mr. Foster came with me. Really he occupies my office, while I use to some extent the sheriff's office, where I have a typewriter and work. We use both offices interchangeably. Mr. Foster pays no rent."

Ground 22 of the motion for a new trial complains of the refusal of the court to give in charge to the jury the provisions of the Civil Code (1910), § 2266, and of the banking act of 1919, as to the powers of banking corporations, and to instruct the jury that "the Morgan County Bank, being a State bank incorporated under the laws of this State, has no power to act as any person's agent in the lending of that person's money, and if, as alleged by plaintiff, W. G. Thompson, cashier of said bank, acted as agent of the plaintiff in lending plaintiff's money, he acted beyond the scope of his authority as an officer of said bank, and such acts can not bind the bank or create any liability on the part of the bank to plaintiff."

Ground 25 was as follows: "The charge as a whole was error because throughout it assumed that the authority of a cashier is unlimited, and that to act in a fiduciary capacity, to undertake trusts, to handle another person's money, lending it, investing it, etc., are all 'in the usual and ordinary course of a bank's business.' If a State bank has any authority of law to act as trustee for another or as another's agent in handling another's funds, it can-

not be said that so doing is in the usual and ordinary course of a bank's business.  On the contrary, it is so unusual that the question has never been passed upon by our courts of final resort, and the court below should have so held as a matter of law, or should have submitted the question to the jury under appropriate instructions.  Nowhere in the charge does the court do so, and error is assigned upon this omission."

Ground 27 was to the effect that the court should have charged the jury that the Morgan County Bank, being a State bank under the act of 1893, and not a trust company, was not authorized to act as trustee or in any fiduciary capacity; that it could not so act unless it qualified itself to do so under the act of 1920, which enables State banks to become clothed with the powers and subject to the liabilities of trust companies.

*E. H. George, Anderson & Wood,* for plaintiff in error.

*Johnson & Foster,* contra.