## OCONEE COUNTY BANK *et al. v.* MARSHALL.

1. "The lending of money on deposit for a customer and depositor by a bank in this State, at his instance and as his agent, is not necessarily ultra vires. An agency to lend money of one of its customers in his name and in his behalf in good faith, and using ordinary diligence as an agent, is within the range of the legitimate business of a bank, unless expressly prohibited by its charter, and is an incidental power of the bank when deemed expedient to be exercised in the course of its business." It does not appear that the charter of the bank in this case prohibited the lending of money for its depositors and customers.

2. The second excerpt from the charge of the court complained of is erroneous; but under the evidence the verdict was demanded on the issue

that the cashier acted for the bank, and the charge was therefor harmless.

No. 4391. JANUARY 14, 1925.

Equitable petition. Before Judge Fortson. Oconee superior court. April 10, 1924.

*Green & Michael,* for plaintiff in error.

*Wolver M. Smith* and *John J. Strickland,* contra.

HILL, J.   J. Z. Marshall brought an equitable petition against J. M. McRee and the Oconee County Bank, praying for a general judgment against J. M. McRee for the amount of principal, interest, and attorney's fees due on a certain promissory note, and that he have a special lien on two certain pieces of real estate described in the petition, and that the deed held by the Oconee County Bank to certain of the property be canceled as a cloud upon petitioner's title, or that it be decreed inferior to plaintiff's deed, and that it also be decreed that a fi. fa. issue and each piece of property be sold separately under the fi. fa., which shall pass a perfect title to the purchaser. There was also a prayer for general relief. On the trial of the case the evidence tended to show that Marshall had on general deposit in the Oconee County Bank $6000. C. H. Ashford was the cashier of the bank, and Marshall approached Ashford and requested him to loan the above sum of money for him. Ashford made arrangements with McRee by which the latter was to borrow the above amount from Marshall and secure him by a deed to certain real estate, which was to be a first lien on the property, consisting of a farm of 200 acres, and a city lot in the town of Watkinsville, Georgia. This deed was accepted by Marshall. After the loan was consummated, Ashford claimed that he was acting in the transaction merely as an individual and friend of Marshall, and that neither he nor the bank received any compensation for this service, and that the bank did not participate in making the loan. After the loan was made, this money was used to pay some of McRee's indebtedness to the bank. In the meantime McRee had become insolvent, and Marshall brought the present suit, alleging that the bank through its cashier, Ashford, had made the loan, and that it was the duty of the bank to use the $6000 in clearing a lien on the property of McRee held by the bank as security, the bank transacting the whole matter for the plaintiff as his agent; that the $6000, being a part of the general deposit, became a special fund to be

used in paying off liens on the property conveyed to plaintiff by McRee, and the bank having failed to cancel the deed held by it as security whether the debt represented by the same had been paid or not, it is postponed to plaintiff's lien on the property. The Oconee County Bank filed its answer, denying that it had anything to do with the transaction so far as making the loan was concerned, and that Ashford in doing so had acted merely in a personal capacity and not as cashier of the bank. The answer, while admitting some of the allegations of the petition, denied that Marshall was to have a first lien on the town property, and averred that Marshall was to get only a second lien on this piece of property, and was to have a first lien on the other piece of property which consisted of a farm of 200 acres. On the trial of the case the jury returned a verdict for the plaintiff; whereupon the bank made a motion for new trial, which was overruled, and it excepted. In addition to the usual general grounds the bank added two grounds complaining of the charge of the court, as follows: "I charge you that it is not a part of the business of a bank under the laws of this State to act as a money broker and to lend money for individuals, and any act on the part of the cashier of a bank in lending money for an individual could impose no liability upon the bank, unless the bank by proper corporate action authorized it, or unless the bank received some benefit from such action. Now, gentlemen, there being no evidence in this case that the bank had taken any corporate action authorizing the transaction which is the subject-matter of this suit, the question resolves itself into whether or not Mr. Ashford acted for the bank in making the loan for Mr. Marshall; and if so, whether he violated the agreement with the result that the bank received some benefit from his violation of the agreement. If you believe from the evidence in the case that Marshall agreed with Ashford, as cashier of the bank, for Ashford, as cashier of the bank, to lend McRee $6000 of Marshall's money on the land described in the petition and the storehouse and lot, and that under the terms of the agreement Marshall was to be given a first lien on the store and lot, and that Ashford failed to carry out these instructions, and did not give Marshall or see that he got a first lien on the storehouse and lot, and the bank benefited from his conduct, then the bank would be liable for the acts of Ashford, if you believe that to be the facts in this case." And "If Mr. Ashford

acted purely as an individual in making the loan, and the bank received no benefit in any way from it, they would not be liable. If Ashford acted as an individual in making the loan, and yet in the transaction if the bank benefited by it, the bank would be liable." The error alleged in the first excerpt from the charge was that the jury was instructed that even if the alleged act on the part of the cashier may have been beyond the power of the bank, that is to say, ultra vires, and also beyond the power and authority of the cashier of the bank, yet if the bank received some benefit, it was liable for the transaction and could not claim that it was ultra vires. The second exception to the charge is that the jury was instructed that even though Ashford, who was the cashier of the bank, may have acted in this transaction in a purely personal capacity, yet the bank was liable if it were benefited in any way. These charges and the exceptions to them are so closely related that they will be treated together.

1. We are of the opinion that the excerpts from the charge set out are not erroneous for any reason assigned. On the argument here counsel for plaintiff in error took the position that a bank in Georgia can not act as a money broker and lend money for others. The evidence in the case shows that the Oconee County Bank was a regular State bank, incorporated under the general banking laws as contained in the Civil Code of 1910. Section 2266, par. 7, of the code is quoted in support of the above contention. The reply to the above contention is that this court has held that "The lending of money on deposit for a customer and depositor by a bank in this State, at his instance and as his agent, is not necessarily ultra vires. An agency to lend the money of one of its customers in his name and in his behalf in good faith, and using ordinary diligence as an agent, is within the range of the legitimate business of a bank, unless expressly prohibited by its charter, and is an incidental power of the bank when deemed expedient to be exercised in the course of its business." *Morgan County Bank* v. *Poullain,* 157 *Ga.* 423 (2) (121 S. E. 813). Our attention has not been called to anything in the charter of the bank prohibiting the lending of money by the bank for any of its customers.

2. It is further contended that the evidence in the case fails to show any corporate action whatsoever that any officer of the bank knew anything of this transaction, or that the board of directors

knew anything about it; and that in no way was the lending of Marshall's money brought to the attention of any officer of the bank or of any one of the constituted authorities of the bank. It has been held that notice to the cashier of the bank is notice to the bank itself. *Bank of St. Marys* v. *Monford,* 6 *Ga.* 44; *Veasey* v. *Graham,* 17 *Ga.* 99 (3) (63 Am. D. 228); *Peoples Bank* v. *Exchange Bank,* 116 *Ga.* 820, 828 (43 S. E. 269, 94 Am. St. R. 144). Under the evidence in this case it appears that the bank had on general deposit for Marshall the sum of $6000. It has been held that a general deposit of money in a bank is a loan to the bank by the depositor, "and is not distinguishable by any clear mark from an ordinary loan of money by one man to another, payable on demand." *Spain* v. *Beach,* 52 *Ga.* 494, 496; *Ricks* v. *Broyles,* 78 *Ga.* 610 (4) (3 S. E. 772, 6 Am. St. R. 280). The money in the instant case was loaned by the cashier of the bank in charge of it. It was not paid out on the check of Marshall, but was loaned by the bank and the amount charged by the bank to Marshall's account, and he was notified accordingly, the cashier notifying Marshall by letter: "I am charging your account with $6000." It also appears that the money was loaned to McRee, who was indebted to the bank, and which indebtedness was secured by a security deed to the storehouse and lot in the town of Watkinsville. It also appears that the cashier applied the $6000 borrowed from Marshall by McRee to an indebtedness by McRee to the bank. It thus appears that the bank received the benefit of the transaction and retained the money, and also retained the loan on the house and lot in Watkinsville. It also appears that in the transaction between Marshall and McRee the security deed was drawn by the attorney for the bank at the suggestion of the cashier of the bank, in which security deed no reference was made to the prior deed held by the bank. Under these circumstances we are of the opinion that the second excerpt from the charge of the court complained of was erroneous; but under the evidence the verdict of the jury was demanded on the issue as to whether the cashier acted for the bank; and the charge was therefore harmless.

　　　　　*Judgment affirmed. All the Justices concur.*